Charles F. BRUSH, Appellant,

v.

**REATA OIL AND GAS CORPORATION,**
et al., Appellees.

No. 10–97–149–CV

Court of Appeals of Texas,
Waco.

Dec. 16, 1998.

**722**

M. Charles Gandy, Searcy & Gandy, P.C., College Station, for appellant.

D. Michael Holt, Lisa A. Hubacek, Horlen & Holt, PLLC, College Station, for appellee.

Before Chief Justice DAVIS, Justice CUMMINGS and Justice VANCE.

## OPINION

REX D. DAVIS, Chief Justice.

Reata Oil and Gas Corporation ("Reata") and Shield Petroleum, Incorporated ("Shield") brought a declaratory judgment action against Appellant Charles F. Brush, seeking a determination of the respective rights of the parties under a contract between Brush and Reata. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997). Three weeks later Brush filed a separate suit against Reata, Shield, and Ray Powell (collectively, "Appellees") alleging common law fraud, statutory fraud, and breach of the contract which is the basis of the declaratory judgment action. The trial court consolidated the lawsuits and realigned the parties, naming Brush as plaintiff and Appellees as defendants. The court directed the parties to replead their causes as realigned. Pursuant to the court's directive, Appellees filed a responsive pleading containing an amended answer to Brush's petition, asserting the declaratory judgment action and adding a counterclaim which alleged that Brush had breached the contract in issue.

A jury failed to find that Appellees had committed common law or statutory fraud. The jury found that Brush had breached the contract and awarded Reata $90,000. The court disregarded the damages award but otherwise rendered judgment in accordance with the verdict. The court awarded Reata attorney's fees in the amount to which the parties had previously stipulated.

Brush raises eight points in his appeal, asserting that the court erred by:

- not entering a judgment notwithstanding the verdict ("JNOV") on common law fraud and damages for such fraud because the jury's verdict on these issues is contrary to the great weight and preponderance of the evidence and because he established common law fraud and damages as a matter of law (two points);

- not entering a JNOV on statutory fraud and damages for such fraud because the jury's verdict on this issue is contrary to the great weight and preponderance of the evidence and because he established statutory fraud and damages as a matter of law (two points);

- not entering a judgment for rescission of the contract and an award of the consideration paid under the contract because he established that he was entitled to rescission as a matter of law (two points);

- awarding attorney's fees to Reata because Reata failed to prove contractual damages and because the court did not render a declaratory judgment in Reata's favor (two points).

We will affirm the judgment.

## I. FACTUAL BACKGROUND

Powell is the president of Reata and Shield. Reata is a wholly-owned subsidiary of Shield. Pursuant to previous negotiations between Brush and Powell, Powell sent Brush a proposed "Lease Purchase and Development Agreement" on December 4, 1992. Powell sent the proposed agreement on Reata stationery. In the agreement, Reata[1] made the following representations concerning the title of the Vilas property in which Reata was offering to sell Brush a working interest:

Reata has purchased and offers for sale 100% of a 75% net revenue interest available in one (1) leasehold, which is subject to a 50% reversionary or "back-in" working interest after payout....

. . . .

Reata has had title to the drillsite examined by Its Attorney and is satisfied that It owns merchantable title to said drillsite and Participant is free to examine or have his attorney examine this title opinion. However, it is expressly understood and agreed that Reata does not warrant title and any loss that may occur due to failure of title, shall and will be a joint loss by all working interest owners including Reata and such loss will be borne in proportion to each interest owner's ownership in the project.

Brush accepted the terms and conditions of the agreement and purchased a twenty percent working interest in the Vilas project. He signed a memorandum of acceptance on December 15, 1992, and returned the signed agreement to Reata's corporate office.

Powell also sent Brush a separate repurchase guarantee on December 4. In this document, Reata agreed to repurchase Brush's interest in the Vilas project for the original purchase price, less all net proceeds distributed, if Brush did not recover 100% of his investment within two years. The repurchase guarantee is also printed on Reata stationery.

The Vilas family signed an Oil, Gas and Mineral Lease in favor of Shield on December 15, 1992. In this lease, the Vilas conveyed to Shield the leasehold estate in which Brush purchased a working interest from Reata and to which Reata had previously represented it had merchantable title.

Powell mailed regular reports to Brush on Reata stationery advising him on the progress of the Vilas project. Brush testified that these reports were very positive and made him feel very good about his investment in the Vilas well. Brush began receiving his monthly disbursements in May 1993. The checks were issued under the name "Revenue Disbursements" and reflect the address shared by Reata and Shield's corporate offices. Powell signed the checks. Each check was accompanied by a statement from Shield indicating Brush's share of operating expenses and the resulting net proceeds.

In April 1993, Reata offered Brush the opportunity to purchase a share of the mineral estate in 3,000 acres which Reata purportedly had purchased from landowners adjacent to the Vilas' property. Brush accepted this offer and purchased a twenty percent share in the acreage at some point between April and July.[2] According to a title opinion offered in evidence, Shield holds legal title to this leasehold estate. Reata did not provide Brush a repurchase guarantee for the acreage agreement.

In June 1993, Reata offered Brush a proportional working interest in the Jericho project which covers approximately 700 acres of the 3,000-acre mineral estate Brush and oth-

---

1. All of the "representations" attributed to Reata in this opinion were made by Powell in written correspondence which he signed on behalf of Reata.

2. The record contains no reference to the actual date Brush purchased this interest. Reata extended the offer by letter dated April 13, 1993. The parties suggest that Brush purchased his interest in the 3,000-acre tract prior to investing in another Reata project on July 8, 1993.

ers had joined Reata in purchasing. Reata made the same representations concerning its title to the Jericho leasehold estate which it had made in the Vilas purchase and development agreement. Brush accepted the Jericho offer and purchased a twenty percent interest in the project by written memorandum dated July 8, 1993. Reata did not provide a repurchase guarantee for the Jericho purchase and development agreement.

Thereafter, Brush began efforts to obtain a written assignment from Reata reflecting his purchases of the working interests in the Vilas and Jericho wells and of a percentage of the leasehold estate in the 3,000–acre tract. Brush requested this assignment so that he could have a specific title document to which he could refer in a trust he was creating for his children. According to Brush, Powell promised the assignment by the end of 1993 but did not deliver on his promise.

In March 1994, Brush instituted a lawsuit against Reata and Shield in federal court alleging among other things the same fraud allegations which are contained in the present lawsuit. This lawsuit and two others filed in April and May of the same year were voluntarily dismissed or non-suited by Brush. After Brush non-suited the last lawsuit in August 1995, Reata and Shield filed their petition for declaratory judgment, and the present litigation ensued.

During the pendency of these various suits, Brush informed Reata in April 1994 that he desired to collect his share of the gas produced by the Vilas and Jericho wells "in-kind" because he was negotiating a separate agreement for the sale of his share of the gas to the company producing and marketing the gas from those wells. By letter dated December 21, 1994, Brush asked Reata to honor its repurchase guarantee and repurchase his interest in the Vilas well under the terms of the guarantee. Brush informed Reata that according to his calculations the repurchase amount should be $148,238.34. Reata disputed Brush's calculations in a letter dated January 11, 1995, and asked Brush or his counsel to contact Reata's counsel to resolve the dispute. The parties were never able to resolve their dispute.

## II. THE FRAUD ISSUES

In Brush's first four points, he claims that the court erred in overruling his motion for JNOV on the jury's failure to find common law or statutory fraud or damages for such fraud. Brush contends that the jury's failure to find fraud and damages is contrary to the great weight and preponderance of the evidence and that he established fraud and damages as a matter of law. Appellees respond that Brush has failed to properly preserve a portion of these points for appellate review and that the evidence is legally and factually sufficient to support the jury's verdict.

### A. DENIAL OF JNOV MOTION

When an appellant challenges the denial of its motion for JNOV, we review the record to determine if it contains more than a scintilla of evidence to support the jury's verdict. *Tubb v. Bartlett*, 862 S.W.2d 740, 744 (Tex.App.—El Paso 1993, writ denied). A party with the burden of proof at trial is entitled to JNOV on a particular issue only if the evidence establishes that issue as a matter of law. *Cain v. Pruett*, 938 S.W.2d 152, 160 (Tex.App.—Dallas 1996, no writ). In determining whether an issue has been established as a matter of law, we consider only the evidence and inferences supporting the jury's verdict and disregard all evidence and inferences to the contrary. *Id.; see also Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227–28 (Tex.1990). If the record contains any competent evidence supporting the issue, JNOV is inappropriate. *Tubb*, 862 S.W.2d at 745.

### B. PRESERVATION OF JNOV ISSUE ON COMMON LAW FRAUD

Brush's first two points aver in part that the trial court erred by not rendering JNOV on the issues of common law fraud and damages for such fraud. Appellees respond that Brush has not properly preserved these points because he did not ask the court to render JNOV on the basis of common law fraud.

A motion for JNOV is one of the vehicles by which a party challenges the legal sufficiency of the evidence to support a jury finding. *See Crow v. Burnett,* 951 S.W.2d 894, 899 (Tex.App.—Waco 1997, pet. denied). Brush's JNOV motion only challenged the jury's verdict on the issue of statutory fraud and damages for statutory fraud. It did not address common law fraud. Accordingly, Brush cannot challenge the trial court's refusal to grant JNOV on the basis of common law fraud because his motion did not ask the trial court to render JNOV on that basis. *See Estate of Clifton v. Southern Pac. Transp. Co.,* 709 S.W.2d 636, 639–40 (Tex. 1986); Tex.R.App. P. 52(a), 49 Tex. B.J. 573 (Tex.1986, repealed 1997).[3]

However, Brush argued in a motion for directed verdict that the evidence established common law fraud and damages for such fraud as a matter of law. This is another appropriate method of preserving a legal sufficiency challenge. *Crow,* 951 S.W.2d at 899. The appellate rules require us to liberally construe the parties' briefs. Tex. R.App. P. 74(p), 49 Tex. B.J. 580 (Tex.1986, repealed 1997). Accordingly, we treat this portion of Brush's first two points as a claim that the evidence establishes common law fraud or damages for such fraud as a matter of law.

The analysis for such a claim is essentially identical to that employed when reviewing the court's denial of a JNOV motion. *Compare Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989), *with Tubb,* 862 S.W.2d at 744–45. That is, to determine whether Brush established common law fraud or damages as a matter of law, we consider only the evidence and inferences supporting the jury's verdict and disregard all contrary evidence and inferences. If the record contains some evidence supporting the verdict, then Brush failed to establish common law fraud as a matter of law. *See Sterner,* 767 S.W.2d at 690–91. However, if the record is devoid of evidence supporting the verdict, then we must examine the entire record to determine whether Brush established common law fraud as a matter of law. *Id.* at 690.

## C. Factual Sufficiency Challenge

Brush's first four points each allege in part that the court erred in denying his motion for JNOV because the jury's answers are "against the great weight and overwhelming preponderance of evidence." However, a party is not entitled to JNOV if the verdict has some evidentiary support, even though the verdict is contrary to the great weight and preponderance of the evidence. *Gulf, Col. & Santa Fe Ry. Co. v. Deen,* 158 Tex. 466, 470, 312 S.W.2d 933, 937 (1958); *Scharer v. John's Cars, Inc.,* 776 S.W.2d 228, 230–31 (Tex.App.—El Paso 1989, writ denied). Thus, Brush's JNOV motion did not preserve his factual sufficiency challenge for appellate review.

Nevertheless, rule 324(b)(2) and (3) of the Rules of Civil Procedure requires a party to raise a complaint that the verdict is contrary to the weight and preponderance of the evidence in a motion for new trial as a prerequisite to asserting the complaint on appeal. Tex.R. Civ. P. 324(b)(2), (3); *Crow,* 951 S.W.2d at 899. Brush raised these challenges to the jury's fraud findings in his motion for new trial. Accordingly, we treat this portion of Brush's first four points as a challenge to the factual sufficiency of the evidence to support the jury's failure to find common law or statutory fraud or damages for such fraud.

A factual sufficiency challenge requires us to consider and weigh all the evidence. *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985); *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

"The jury is the sole judge of the witnesses' credibility and the weight to be

---

**3.** We cite the former appellate rules because Brush perfected this appeal before the current rules took effect. The present appellate rules also require a party to first seek a ruling from the trial court on an issue to preserve the right to appellate review of that issue. *See* Tex.R.App. P. 33.1(a)(1).

accorded their testimony. The jurors may also derive inferences from the evidence and decide between conflicting inferences. A jury finding based on conflicting evidence and inferences is generally conclusive." *Libhart v. Copeland,* 949 S.W.2d 783, 803 (Tex. App.—Waco 1997, no writ) (citing *Woodlawn Mfg., Inc. v. Robinson,* 937 S.W.2d 544, 550 (Tex.App.—Texarkana 1996, writ denied)).

### D. FRAUD

 To prove common law fraud, a plaintiff must establish:

(1) the defendant made a material representation;

(2) which was false;

(3) the defendant made the representation knowing it to be false or made it recklessly as a positive assertion without any knowledge of its truth;

(4) the defendant intended that the plaintiff act upon the representation;

(5) the plaintiff acted in reliance upon the representation; and

(6) suffered injury as a result.

*Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 723 (Tex.1990); *Libhart,* 949 S.W.2d at 800–01.

 Section 27.01 of the Business and Commerce Code provides a statutory cause of action for fraud in real estate and stock transactions. TEX. BUS. & COM.CODE ANN. § 27.01 (Vernon 1987). The elements of statutory fraud under section 27.01 are essentially identical to the elements of common law fraud except that the statute does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages.[4] *See Swanson v. Schlumberger Technology Corp.,* 895 S.W.2d 719, 732 (Tex. App.—Texarkana 1994), *rev'd on other grounds,* 959 S.W.2d 171 (Tex.1997); *Diversified, Inc. v. Walker,* 702 S.W.2d 717, 723 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Accordingly, we will address the legal and factual sufficiency of the evidence on common law and statutory fraud together.

### E. THE PERTINENT FACTS

Brush alleges that Reata defrauded him by misrepresenting that it held merchantable title to the Vilas and Jericho leasehold estates and that it owned the mineral estate in the 3,000 acres in which Brush purchased a twenty percent interest.

Reata clearly represented in the lease purchase and development agreements covering the Vilas and Jericho wells that "Reata has had title to the drillsite examined by Its Attorney and is satisfied that It owns merchantable title to said drillsite." Concerning the 3,000–acre tract, Reata informed Brush that "we have added all of the acreage shown on the [accompanying] map so that we now have approximately 3,000 acres inventory in this area." Reata referred to the acreage as "our lease acreage" and made other references in the letter of a similar nature. One and one-half months later, Reata advised in a letter that "Reata ha[s] leased approximately 3,500 acres of leasehold in and around our Vilas tract."

The record reflects several reasons Brush elected to participate in these ventures with Reata. On at least eight different occasions in his testimony, Brush explained that he invested in the Vilas well because Reata's repurchase guarantee made it a "riskless investment." He testified that the repurchase guarantee "precipitated" him to invest in the Vilas well and that the existence of the guarantee "encouraged" him to invest, notwithstanding any other considerations.

Brush testified on several occasions that he relied on the advice of a long-time friend in making the decision to invest with Reata. He explained that this advice was "one of the principal reasons" he decided to invest. On direct examination, he testified that he had sold a piece of property on Grand Cayman in the summer of 1992 for $1,000,000. Brush had purchased this property in the 1950's for "about $1,600." He denied that he was looking for a tax shelter for the proceeds from this sale but conceded on cross-examination

---

4. If a section 27.01 plaintiff does establish knowledge on the defendant's part, the plaintiff can receive exemplary damages for the fraudulent conduct. TEX. BUS. & COM.CODE ANN. § 27.01(c) (Vernon 1987).

that he had considered the tax advantages offered by the Reata investment when he made the investment.

Brush testified on direct examination that he relied "in full" on the title representations contained in the Vilas and Jericho agreements when he invested in those ventures. However, he qualified this reliance moments later when he responded "I think so" to counsel's question regarding whether the representations induced him to invest in the Vilas and Jericho projects. He stated that he would not have invested with Reata had he known that it was a wholly-owned subsidiary of Shield. According to Brush, such a corporate structure "raises a red flag because unless one is used to shield the other from liability, there is basically no reason for that to occur." When cross-examined with prior deposition testimony, Brush conceded that the Reata–Shield relationship would not have been a consideration in his investment decision.[5]

Powell testified that Reata acted as Shield's agent in negotiating the agreements with Brush. Appellees presented expert testimony to the effect that such practices are commonplace in the oil and gas industry. An attorney employed by Reata and Shield primarily for title work testified that Reata held equitable title to the properties in issue and Shield held legal title to the properties.

Brush received monthly disbursements for his interests in the Vilas and Jericho wells. Although each disbursement check was accompanied by a statement from Shield, Brush explained that his bookkeeper handled the checks and that he did not "go through" the statements because he had "no expertise on the charges for maintaining the well" and he had "no reason to doubt" the accuracy of

the statements. Brush received $149,270 in net disbursements.

### F. APPLICATION OF THE LAW TO THE FACTS

We assume without deciding that Reata made false representations when it stated that it owned merchantable title to the Vilas and Jericho leaseholds. *See First Am. Title Co. v. Prata,* 783 S.W.2d 697, 702–03 (Tex. App.—El Paso 1989, writ denied); *Lund v. Emerson,* 204 S.W.2d 639, 641 (Tex.Civ. App.—Amarillo 1947, no writ). We will likewise assume that Reata made false representations when it referred to the 3,000–acre tract as "our lease acreage" and when it stated "Reata ha[s] leased approximately 3,500 acres of leasehold in and around our Vilas tract." *See Clem v. Fulgham,* 14 S.W.2d 812, 813 (Tex. Comm'n App.1929, judgm't adopted); *Old Nat'l Life Ins. Co. v. Bibbs,* 184 S.W.2d 313, 316 (Tex.Civ.App.— Austin 1944, writ ref'd w.o.m.).

### 1. Legal Sufficiency

▮▮▮▮ Brush had to establish that Reata made a *material* misrepresentation in order to prevail on either his common law or statutory fraud claims. A misrepresentation is material if it induces a party to enter a contract. *Marburger v. Seminole Pipeline Co.,* 957 S.W.2d 82, 86 n. 4 (Tex.App.—Houston [14th Dist.] 1997, pet. denied); *Beneficial Personnel Servs. of Tex., Inc. v. Rey,* 927 S.W.2d 157, 168 (Tex.App.—El Paso 1996), *writ granted w.r.m.,* 938 S.W.2d 717 (Tex. 1997); *American Med. Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 338 (Tex.App.—Houston [14th Dist.] 1991, no writ). A misrepresentation can be material even though it is not the party's sole inducement for entering the contract if the party relied on the misrep-

---

**5.** One month before signing the Jericho agreement, Brush received a letter from Reata informing him of a deal Reata had reached with another oil company pursuant to which the other company had acquired an additional 1,000 acres at its own expense. Reata would control the working interest in this acreage and offer the same percentage of ownership in the working interest which it had offered in the Vilas project. One of the six numbered terms of the agreement specifically outlined in this letter was that "Reata's staff locates, approves, and negotiates the leases and takes them in Reata's name or that of

our parent company." Brush testified in his deposition that he did "not really" deem this statement noteworthy.

On cross-examination, Appellees sought to impeach Brush with this deposition testimony. Brush's cross-examination continued as follows:
Q: When you told us yesterday that you would have never invested if you had known there had been a parent company, that's not correct, is it, Dr. Brush?
A: Well, it doesn't seem correct on these facts.

resentation. *Marburger*, 957 S.W.2d at 86 n. 4; *Miller v. Latham*, 276 S.W.2d 858, 866 (Tex.Civ.App.—Amarillo 1954, writ ref'd n.r.e.).

 Brush testified to several considerations which played a role in his decision to invest with Reata: the repurchase guarantee, a friend's advice, tax considerations, and Reata's title representations. Although he testified that he relied "in full" on the title representations made in the Vilas and Jericho agreements, he significantly qualified this reliance when he testified that he merely thought the representations induced him to invest in those projects. He explained that he relied on Reata's misrepresentations of ownership in the 3,000–acre tract in the same manner. Disregarding Reata's title and ownership representations, the remaining considerations constitute competent evidence on which the jury could decide that Reata's misrepresentations were immaterial. *See Tubb*, 862 S.W.2d at 745. Accordingly, Brush failed to establish as a matter of law that Reata committed common law or statutory fraud.

### 2. Factual Sufficiency

 Brush testified that he relied on Reata's misrepresentations of merchantable title and ownership when he decided to invest with Reata in the Vilas and Jericho wells and in the 3,000 acres.[6] However, Brush qualified this testimony when he explained that he merely thought these representations had induced him to invest.

Brush repeatedly emphasized the lack of risk associated with the Vilas investment as a primary consideration in that investment. The advice of his friend was "one of the principal reasons" he invested with Reata. Although Brush denied that he was looking for a tax shelter, investing with Reata offered a tax benefit which would help offset the $998,400 gain he realized on the sale of his Grand Cayman property.

---

**6.** Brush also testified that he would not have invested with Reata had he known of its status as a wholly-owned subsidiary of Shield or had he known that Reata had approximately $400,000 in adverse judgments. Although this information is relevant to the merchantability of Reata's title,

This evidence presented the jury with a disputed fact issue concerning whether Reata's misrepresentations were material. We will not substitute our judgment for the jury's on a disputed fact issue. *See Libhart*, 949 S.W.2d at 803; *Woodlawn Mfg.*, 937 S.W.2d at 550. We cannot say that the jury's failure to find common law or statutory fraud is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Dyson*, 692 S.W.2d at 457.

### G. Summary

Brush failed to establish common law or statutory fraud as a matter of law. The jury's failure to find fraud is not contrary to the weight and preponderance of the evidence. Accordingly, we overrule Brush's first and third points. Because Brush failed to establish fraud as a matter of law and because the jury's verdict is not contrary to the weight and preponderance of the evidence, Brush is not entitled to damages. Thus, we overrule his second and fourth points.

## III. RESCISSION

Brush argues in his fifth point that the court erred in not granting judgment for rescission of the parties' contracts because he established his entitlement to rescission as a matter of law. He contends in his sixth point that the court erred in not ordering repayment of the considerations he had paid when he entered those contracts as damages for rescission. Appellees respond that because Brush did not obtain findings of fact and conclusions of law the findings necessary to support the judgment are implied. Appellees also claim that Brush is not entitled to rescission because he failed to establish fraud.

 The parties submitted the issue of rescission to the court for determination as a matter of law after receipt of the jury's verdict. When the parties submit a portion

---

Reata did not represent to Brush that it was an independent corporation or that there were no outstanding judgments against it. Thus, these relevant facts do not constitute actionable misrepresentations.

of the case to the trial court separately from the issues submitted to the jury, the trial court's judgment "implies all necessary fact-findings in support of its judgment" if findings of fact and conclusions of law are not requested. *Shenandoah Assocs. v. J & K Properties, Inc.,* 741 S.W.2d 470, 484 (Tex. App.—Dallas 1987, writ denied) (op. on reh'g); *see also Rosestone Properties, Inc. v. Schliemann,* 662 S.W.2d 49, 51 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). When findings of fact and conclusions of law are not requested, the judgment must be affirmed if it can be upheld on any theory of law supported by the evidence. *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984); *Martin v. State,* 873 S.W.2d 457, 458 (Tex.App.—Waco 1994, no writ); *Schliemann,* 662 S.W.2d at 51. Accordingly, we will review the record to determine whether Brush established his entitlement to rescission as a matter of law. *See Bowles v. Reed,* 913 S.W.2d 652, 660 (Tex.App.—Waco 1995, writ denied); *see also Schliemann,* 662 S.W.2d at 51.

 In a third amended original petition,[7] Brush sought rescission as an alternative form of relief based on Reata's alleged fraudulent conduct. "Rescission is an equitable remedy and, as a general rule, the measure of damage is the return of the consideration paid, together with such further special damage or expense as may have been reasonably incurred by the party wronged on account of the contract." *Smith v. National Resort Communities, Inc.,* 585 S.W.2d 655, 660 (Tex.1979).

 However, if a party seeks to rescind a contract on the basis of fraud but fails to prove a viable fraud claim, the party is not entitled to rescission of the contract. *See Pitman v. Lightfoot,* 937 S.W.2d 496, 532 (Tex.App.—San Antonio 1996, writ denied). We have already determined that Brush failed to prove his fraud claims as a matter of law. Thus, he was not entitled to rescission of the agreements with Reata. We overrule his fifth and sixth points.

## IV. ATTORNEY'S FEES

Brush avers in his seventh point that the court erred in awarding Reata attorney's fees for breach of contract because Reata did not obtain a judgment on this claim. The trial court's judgment reads in pertinent part, "Pursuant to the Uniform Declaratory Judgment Act, and the stipulations and agreements of the parties, the Court hereby awards Reata Oil & Gas Corporation its reasonable, necessary, just and equitable attorney's fees and costs." The court clearly premised its award of attorney's fees to Reata on the basis of Reata's declaratory judgment action, not its contract claim. Thus, we overrule Brush's seventh point.

Brush contends in his eighth point that the court erred in awarding Reata's attorney's fees under the declaratory judgment statute. Brush specifically argues that Reata is not entitled to attorney's fees because it obtained no favorable findings on its declaratory judgment action and because it inappropriately pursued declaratory relief solely as a subterfuge by which it could claim attorney's fees.

 A trial court may award just and equitable attorney's fees to a non-prevailing party pursuant to the Uniform Declaratory Judgments Act. *Maris v. McCraw,* 902 S.W.2d 191, 194 (Tex.App.—Eastland 1995, writ denied); *McLendon v. McLendon,* 862 S.W.2d 662, 673 (Tex.App.—Dallas 1993, writ denied); *accord Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 637 (Tex.1996) (award of attorney's fees not dependent on finding that party "substantially prevailed" in declaratory judgment action). The Act "entrusts attorney's fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.

---

7. Appellees claim that Brush has not properly preserved this issue because his third amended original petition is not in the transcript transmitted to this Court. However, this pleading is contained in the transcript. It was merely omit-

ted from the index, and the District Clerk has forwarded a supplemental transcript correcting this omission. Thus, Appellees' preservation argument is without merit.

1998).[8]

■ A party may not seek declaratory relief to settle issues already pending before a court. *BHP Petroleum Co. v. Millard,* 800 S.W.2d 838, 841 (Tex.1990). Thus, "a party cannot bring a counterclaim for declaratory relief and recover attorney's fees when the counterclaim seeks resolution of disputes already pending before the court." *Thomas v. Thomas,* 902 S.W.2d 621, 626 (Tex.App.—Austin 1995, writ denied); *accord John Chezik Buick Co. v. Friendly Chevrolet Co.,* 749 S.W.2d 591, 594–95 (Tex.App.—Dallas 1988, writ denied) (declaratory judgment counterclaim presenting no new controversy and "brought solely to pave an avenue to attorney fees" is improper). However, this rule applies only if the matter is already pending when a party files its declaratory judgment action. *Thomas,* 902 S.W.2d at 626.

We recently reversed an attorney's fee award premised on the Declaratory Judgments Act in a suit involving a title dispute. *See McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.,* 962 S.W.2d 676, 685 (Tex.App.—Waco 1998, writ denied). In *McRae Exploration,* the plaintiffs brought a trespass to try title action concerning certain mineral interests which both they and the defendants claimed under competing deeds. The jury found among other things that the plaintiffs' predecessors in title were bona fide purchasers. Pursuant to the verdict, the trial court rendered judgment awarding full legal and equitable title to the plaintiffs, declaring the deed under which the defendants claimed title void as to the property in dispute, and awarding attorney's fees pursuant to the Declaratory Judgment Act. *Id.* at 678–79.

We affirmed the judgment as to the title question but reversed the attorney's fee award. *Id.* at 685. We reversed the attorney's fee award because the suit before us:

involve[d] a title dispute between competing deeds. It d[id] not involve the construction or validity of the deeds. As such

it [wa]s an action for trespass to try title and not for declaratory judgment. *Id.*

■ The present suit differs significantly from the *McRae Exploration* case. In this case, the parties are disputing the terms of their agreements. Thus, the present suit required the court to construe the parties' agreements. The Act on its face provides that a party may seek declaratory relief involving "any question of construction ... arising under [a written contract]" "either before or after there has been a breach." TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997). A court can declare the rights and status of the parties to a contract "whether or not further relief is or could be claimed." *Id.* § 37.003(a). "The fact that other issues in the general controversy between the parties remain unresolved by the ... declaratory judgment does not deprive the trial court of the power and discretion to render such a judgment." *Standard Fire Ins. Co. v. Fraiman,* 514 S.W.2d 343, 346 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ). We must liberally construe the Act. TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 1997).

■ As discussed at the beginning of this opinion, Reata and Shield actually filed their petition for declaratory relief three weeks before Brush filed his lawsuit. They chose to institute this proceeding as a declaratory judgment action, which they could properly do under the terms of the Act. We decline to hold that if a trial court chooses to realign as a defendant a plaintiff properly seeking declaratory relief, the former plaintiff forfeits its rights under the Act merely because it must first respond to the former defendant's cause of action with a responsive pleading before it can assert its own request for affirmative declaratory relief by way of a counter-claim. In this case, the trial court's award of attorney's fees pursuant to the Act clearly reflects that the court did not intend to deny Reata's declaratory judgment action when it realigned the parties. Thus, Brush has not demonstrated that Appellees pursued

---

**8.** The reasonableness and necessity of the attorney's fees in this case is not an issue as the parties stipulated to the amount of attorney's fees

the prevailing party would recover. *See Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998).

their declaratory judgment claim solely to recover attorney's fees under the statute. *See Thomas,* 902 S.W.2d at 626.

The parties stipulated as to what reasonable and necessary attorney's fees would be for the prevailing party. Reata properly sought declaratory relief. Thus, the record does not demonstrate an abuse of discretion on the part of the trial court in awarding attorney's fees to Reata, even if Reata did not ultimately prevail on its request for declaratory relief. *See Barshop,* 925 S.W.2d at 637; *Maris,* 902 S.W.2d at 194; *McLendon,* 862 S.W.2d at 673. Accordingly, we overrule Brush's eighth point.

We affirm the judgment.

Justice VANCE, dissenting.

BILL VANCE, Justice, dissenting.

I disagree with the majority's decision to uphold the award of attorney's fees under the Declaratory Judgment Act (the Act).

The majority recognizes the rule that the Act may not be utilized as a vehicle to recover attorney's fees when interposed through a counterclaim that adds nothing to the suit, because the issues are already pending before the court. It seems, however, to place much emphasis on the fact that Reata and Shield filed their suit under the Act first. I am not persuaded that this is the proper inquiry. In fact, focusing on who filed first encourages a "race to the courthouse" to file a declaratory judgment action in an attempt to convert a non-attorneys-fees case into one in which attorneys fees can be awarded. I also think the fact that the court realigned the parties should not affect this determination.

I believe the better course would be to examine the controversy at the time of trial, based on the pleadings on which the case is tried, to see if a party is then seeking a remedy under the Act that will not be effectively afforded by their other claims and defenses. *See Hartford Cas. Ins. Co. v. Budget Rent–A–Car Systems, Inc.,* 796 S.W.2d 763, 772 (Tex. App.—Dallas 1990, writ de-

nied); *Joseph v. Ranger,* 188 S.W.2d 1013, 1015 (Tex. Civ. App.—Eastland 1945, writ refused w.o.m). As the court said in *Joseph*:

> When the parties as here have once locked horns and are demanding forcible sanctions, there is no longer room for judicial declarations separate from those which will be implicit or express in the final judgment or decree.

*Joseph,* 188 S.W.2d at 1015.

Texas adheres to the rule that attorney's fees are not recoverable in an action unless provided for by statute or by contract between the parties. *New Amsterdam Cas. Co. v. Texas Indus., Inc.,* 414 S.W.2d 914, 915 (Tex.1967). Thus, as a general rule, a prevailing party is not entitled to recover attorney's fees from the opposing party. *Turner v. Turner,* 385 S.W.2d 230, 233 (Tex.1964) More and more, however, courts are awarding attorney's fees under the Act when it adds nothing to the resolution of the dispute. I believe that when a party invokes the Act in a way that would "serve no useful purpose," it should not be allowed to form the basis for awarding attorney's fees. *See Joseph,* 188 S.W.2d at 1015. Again, I would make that determination based on the pleadings on the date of trial, and considering the judgment ultimately rendered.

Here, after the court realigned the parties and they repled, Reata and Shield interposed their claim under the Act along with their claim for damages for breach of contract.[1] At the time of trial, Brush had claims for fraud and recission. Reata and Shield had a claim for breach of contract, on which they prevailed and were awarded damages. I fail to see how their claims under the Act served any useful purpose in resolving the dispute between the parties. The judgment reflects that it did not. Accordingly, I would reform the judgment and delete the award of attorney's fees to Reata and Shield.

---

1. Although attorney's fees are available in suits on contracts, as the majority points out, they

were awarded only on the basis of the Act.