Robert OConnor v. Boyd A Miller etal
















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-374-CV

     ROBERT O'CONNOR,
                                                                              Appellant
     v.

     BOYD A. MILLER
     AND TRIM-AIRE AVIATION, INC.,
                                                                              Appellees
 

From the 77th District Court
Limestone County, Texas
Trial Court # 25,344-A
                                                                                                                

O P I N I O N
                                                                                                                

      Robert O’Connor complains of a take-nothing judgment rendered against him after a jury trial
on claims he made against Boyd Miller and Trim-Aire Aviation, Inc. for breach of contract,
deceptive trade practices, fraud, and negligent misrepresentation. O’Connor had purchased six
used airplane engines from Trim-Aire, and he alleged that the condition of the engines was
misrepresented. O’Connor raises nine issues on appeal:
      1.   The knowledge of the person who brokered the sale of the six engines about the sale
being “as is” cannot be imputed to O’Connor, because that person did not act as
O’Connor’s agent with O’Connor’s best interest in mind.
 
      2.   Because O’Connor did not know, imputed or otherwise, that the sale was “as is,” that
alone cannot, as a matter of law, defeat the “producing cause” elements of his claims.
 
      3.   The jury’s finding that Miller and Trim-Aire did not engage in deceptive trade practices
is not supported by the evidence as a matter of law.
 
      4.   The jury’s finding that Miller and Trim-Aire did not engage in deceptive trade practices
is against the great weight and preponderance of the evidence.
 
      5.   O’Connor proved his damages as a matter of law.
 
      6.   The jury’s finding that Miller and Trim-Aire did not breach a contract with O’Connor is
not supported by the evidence as a matter of law.
 
      7.   The jury’s finding that Miller and Trim-Aire did not breach a contract with O’Connor is
against the great weight and preponderance of the evidence.
 
      8.   The jury’s finding that Miller and Trim-Aire did not defraud O’Connor is not supported
by the evidence as a matter of law.
 
      9.   The jury’s finding that Miller and Trim-Aire did not defraud O’Connor is against the
great weight and preponderance of the evidence.

      We will affirm the judgment.
Factual Background
      Jack Wall purchased six used airplane engines and had Trim-Aire, Inc., a company owned
by Boyd Miller, pick them up. Trim-Aire is an aircraft maintenance company in Mexia which also
deals in airplane-engine parts. Trim-Aire was to review, appraise, and sell the engines. The
“heart” of this type of engine is composed of six parts which rotate and which have limited lives. 
The use of these parts is regulated by the Federal Aviation Administration. Once their lives
expire, based on the number of rotations expended, their resale value is insignificant. Log books
are routinely kept on airplane engines to, in part, keep track of the useful time remaining on these
parts. Sellers of engines also create specification sheets (“spec sheets”) which are supposed to be
based on the information in the log books, although sometimes the information in previous spec
sheets is merely carried over to new spec sheets. The spec sheets contain basic information about
the life remaining on the time-limited parts. The log books and spec sheets are delivered to each
successive owner of an engine. If these written records are not clear or accurate, or the serial
number on a part is unreadable or does not match those in the records, the life remaining on that
part cannot be determined and it loses resale value.
      The condition of some of the time-limited parts can be checked by partially disassembling the
engines, examining the parts and their serial numbers, and studying the logs. But other parts are
deeply imbedded in the engine, and special tools for disassembly are required which some
businesses, like Trim-Aire, do not have. For these imbedded parts, the log books and spec sheets
are used to help verify the parts’ useful lives. Although it is not uncommon for purchasers to rely
solely on spec sheets to determine the life remaining on time-limited parts, this entails a significant
risk because the spec sheets may be inaccurate.
      Boyd Miller worked out a fee arrangement with Pete Miller (no relation) for Pete to find
purchasers for the six engines. But Pete also worked out an arrangement with O’Connor, who
owned an FAA-approved machine shop called Gas Turbine Services, for Pete to find airplane
engines which O’Connor would purchase. On sale of the reconditioned parts in the engines, they
would split the profits equally. Boyd provided spec sheets for the six engines on Trim-Aire
letterhead for Pete and potential purchasers to examine. The information in these spec sheets came
primarily from the spec sheets provided to Boyd by the previous owner of the six engines. Boyd
also made the log books available for Pete to examine. Pete told O’Connor about the engines at
Trim-Aire, and O’Connor sent his employee, David Doig, to examine the engines. Eventually
Pete arranged for O’Connor to purchase the six engines for $150,000. O’Connor had no direct
dealings with Boyd, who paid Pete $5,000 for his efforts in brokering the sale. Boyd and
O’Connor each testified at trial that he did not know at the time of the sale about the other’s
financial arrangement with Pete; Boyd testified he knew only that Pete had a financial backer. 
Boyd also testified that he told Pete the information in the spec sheets and log books was
unverified, and that the sale was “as is.” Pete’s testimony confirmed that the sale was “as is.” 
O’Connor testified he relied solely on the spec sheets provided by Trim-Aire, which he thought
were accurate, and he did not know that the sale was “as is.”
      After purchase, O’Connor had the engines completely disassembled in preparation for
reconditioning and selling the parts. He discovered that (a) parts which, according to the spec
sheets, were supposed to be in certain engines had been substituted with other parts, (b) serial
numbers on some parts were unreadable, and (c) information in the spec sheets did not always
match information in the log books. Ultimately, O’Connor sold the useable parts from the six
engines for over $280,000. But he determined that nine parts could not be used, and he demanded
that Boyd pay him approximately $62,000, an amount O’Connor claimed he could have sold those
parts for if they had been as represented. This occurred about one year after O’Connor bought
the engines. Boyd offered to examine the log books to help resolve the complaints. He testified
at trial that the log books O’Connor sent him had been altered from what he provided O’Connor
at the time of the sale. Boyd also offered to buy the engines back, but apparently it was
impractical to reassemble them. O’Connor eventually filed suit against Boyd and Trim-Aire for
breach of contract, violations of the Texas Deceptive Trade Practices Act (DTPA), fraud, and
negligent misrepresentation. A jury found against O’Connor on all claims, and the court rendered
a take-nothing judgment.
Our Review
      We will first address O’Connor’s six sufficiency-of-the-evidence issues (3-4, 6-7, & 8-9) on
the jury’s failure to find a breach of contract, violations of the DTPA, or fraud. We will then
review the “as is” provision of the agreement as it applies to the first six issues. Finally, we will
address the fifth issue on damages only if O’Connor prevails on other issues that would entitle him
to damages.
Standards of Review for Sufficiency of the Evidence
      Six of O’Connor’s nine issues concern challenges to the legal and factual sufficiency of the
evidence. We will use the following standards to review these issues.
Legal Insufficiency
      When a party who had the burden of proof brings a “legal insufficiency” issue complaining
of an adverse finding, that party must demonstrate that the evidence establishes conclusively, i.e.,
as a matter of law, all vital facts in support of the finding sought by the party. Dow Chemical Co.
v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690
(Tex. 1989). We first examine the record for evidence supporting the adverse finding, ignoring
all evidence to the contrary. Id. If more than a scintilla of evidence supports the adverse finding,
our inquiry ends; but if no evidence supports the adverse finding, we review the entire record to
determine if the contrary proposition is established as a matter of law. Id.
Factual Insufficiency
      When a party who had the burden of proof complains of the factual insufficiency of an adverse
finding, it must demonstrate that the adverse finding is contrary to the great weight and
preponderance of the evidence. Dow Chemical, 46 S.W.3d at 242; Cropper v. Caterpillar Tractor
Co., 754 S.W.2d 646, 651-53 (Tex. 1988). We weigh all the evidence and set aside the adverse
finding only if it is so against the great weight and preponderance of the evidence that it is clearly
wrong and unjust. Dow Chemical, 46 S.W.3d at 242. In doing so, we must detail the evidence
and state in what regard the contrary evidence greatly outweighs the evidence in support of the
adverse finding. Id. We must also remember that it is within the province of the jury to
determine the credibility of the witnesses and the weight to be given their testimony. Brush v.
Reata Oil & Gas Corp., 984 S.W.2d 720, 725-26 (Tex. App.—Waco 1998, pet. denied). The
trier of fact may believe one witness and disbelieve another. McGalliard v. Kuhlmann, 722
S.W.2d 694, 697 (Tex. 1986). It may resolve inconsistencies in the testimony of a witness, and
it may accept lay testimony over that of experts. Id. We may not pass upon a witness’s credibility
or substitute our judgment for that of the jury, even if the evidence might clearly support a
different result. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998) (citing Pool
v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986)).
Sufficiency Measured Against the Jury Charge
      When we review for sufficiency of the evidence, “it is the court’s charge, not some other
unidentified law, that measures the sufficiency of the evidence when the [complaining] party fails
to object to the charge.” Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000). None of the parties
objected to the charge at trial as it applies to the issues on appeal. Tex. R. Civ. P. 274. Nor has
any party complained on appeal about the jury charge.
Issues 6 and 7: Breach of Contract
      O’Connor complains of the sufficiency of the evidence concerning the jury’s adverse finding
about his breach-of-contract claim.
      The first question in the charge was this threshold question: 
Did [Boyd and/or Trim-Aire] agree to sell the six airplane engines to Robert O’Connor and/or
his agents with the specific engine parts as set out in the engine specification sheets provided
by [Boyd and/or Trim-Aire] to Robert O’Connor and/or his agents. 

There were five instructions and definitions with the question:
In deciding whether the parties reached this agreement, you may consider what they said and
did in light of the surrounding circumstances, including any earlier course of dealing. You
may not consider the parties’ unexpressed thoughts or intentions.
 
In addition, you may consider whether the agreement to sell the six airplane engines to Robert
O’Connor and/or his agents was an ‘as is’ sale. By agreeing to purchase something ‘as is,’
a buyer agrees to make his own appraisal of the bargain and to accept the risk that he may be
wrong.
 
A party’s conduct includes the conduct of another who acts with the party’s authority or
apparent authority.
 
Authority for another to act for a party must arise from the party’s agreement that the other
act on behalf and for the benefit of the party. If a party so authorizes another to perform an
act, that other party is also authorized to do whatever else is proper, usual, and necessary to
perform the act expressly authorized.
 
Apparent authority exists if a party (1) knowingly permits another to hold himself out as
having authority, (2) through lack of ordinary care bestows on another apparent existence of
authority to his detriment. Only the acts of the party sought to be charged with responsibility
for the conduct of another may be considered in determining whether apparent authority
exists.

The jury answered “no” to the question as to both Boyd and Trim-Aire.
      Part of O’Connor’s argument on appeal is that, although there is evidence that Pete was his
agent, because Pete’s duty as his agent was compromised by Pete’s agreement with Boyd to sell
the engines for a fee, then the usual rule of agency law—which is that what Pete knew, such as
that the sale was “as is,” is imputed to O’Connor, who is the principal—does not apply. But the
jury was not instructed, and there were no definitions, about these matters of agency law. As
noted, O’Connor does not complain on appeal about the charge. The charge submitted, however,
does contain definitions and instructions which inform the jury that the conduct of one person
(such as entering into an “as is” agreement) who is authorized to act for another may be imputed
to that other person. We will review these sufficiency issues according to the charge as given. 
Osterberg, 12 S.W.3d at 55.
      O’Connor also argues that the “as is” agreement is not enforceable because he was defrauded
into agreeing to it by misrepresentations that the spec sheets were accurate. Again, the record
does not show that he objected to inclusion of the “as is” instruction in the charge, and so we will
review these issues according to the charge as given. Id.
      Finally, O’Connor discusses the Texas Uniform Commercial Code (U.C.C.) and its sections
on warranties. But a violation of the U.C.C. or of warranties was never pled, nor tried by
consent, and there was no mention of the U.C.C. or warranties in the jury charge. O’Connor
cannot raise these matters on appeal for the first time. The charge as given will govern our
review. Id.
Legal Insufficiency
      Under the instructions included with question one, if the jury found that Pete was acting on
O’Connor’s behalf and under his authority, and that the agreement between Pete and Boyd was
for the sale to be “as is,” then the jury had a basis for making a finding adverse to O’Connor. 
Ignoring all evidence to the contrary of the adverse finding, there was trial testimony that (a)
O’Connor engaged Pete, for a share of the profits on resale, to broker a purchase of airplane
engines from Boyd and Trim-Aire, (b) O’Connor never had any direct dealings with Boyd or
Trim-Aire, and (c) the sale was “as is.” Thus, we find more than a scintilla of evidence to support
a conclusion that Pete was acting under O’Connor’s authority and on his behalf, and O’Connor
purchased the engines without an agreement regarding the specific engine parts in the spec sheets. 
See Dow Chemical, 46 S.W.3d at 241.
      We overrule issue six.
Factual Insufficiency
      In a factual-sufficiency review, we consider all the evidence. Additional testimony came from
Boyd, who said that he did not do a thorough review of the log books, there was information in
the spec sheets which had not been verified by a complete disassembly of the engines, and he told
Pete the log books and spec sheets were unverified. Another witness was Trim-Aire’s chief
mechanic, Dennis McCoslin, who also testified that he told Pete the records were in bad shape. 
In addition, O’Connor’s mechanic, Robert Doig, testified he visually inspected the engines with
Pete. Thus, they could see that the engines were not fully disassembled, making inspection of all
the parts impossible. Doig also testified he would have preferred to have made a closer
examination of the log books, but he did not tell O’Connor that. Pete testified that he did not
remember discussing the accuracy of the spec sheets with Boyd, he did not study the log books
closely, he relied on the spec sheets as “the Bible,” and he thought the information in them came
from the logs. He admitted the sale was “as is” and said he did not believe Boyd had lied to him
about anything.
      O’Connor testified that neither Pete nor anyone else told him the sale was “as is.” He also
testified that Pete had been his agent in other transactions, but because of Pete’s financial
arrangement with Boyd regarding the engines, he questioned the extent to which Pete was acting
solely as his agent in this transaction. But O’Connor confirmed that he never dealt directly with
Boyd or Trim-Aire, only through Pete, and it is uncontroverted that Pete brokered the deal with
Boyd for O’Connor’s benefit. In fact, the sales invoice was in Pete’s name, although O’Connor
wired the $150,000 to Boyd.
      Although O’Connor claims he relied totally on the spec sheets and did not know the sale was
“as is,” there was testimony from numerous witnesses that (1) the engines had not been completely
disassembled, and so all the parts had not been visually inspected, (2) the information in the log
books and spec sheets—which were made available to Pete and Doig for inspection—had not been
completely verified, (3) there were discrepancies on the face of some of the spec sheets, (4) Pete,
who was acting on O’Connor’s behalf, knew or had been informed of these matters, and (5) the
agreement between Boyd and Pete was that the sale was “as is.”
      Weighing all the evidence and remembering that the jury determines the credibility of the
witnesses and the weight of the testimony, we do not believe the jury’s failure to find that the
parties agreed that the engine parts would specifically match with the information in the spec
sheets is so against the great weight and preponderance of the evidence that it is clearly wrong and
unjust. Id.; Maritime Overseas, 971 S.W.2d at 407.
      We overrule issue seven.
Issues 3 and 4: DTPA Violations
      O’Connor next complains of the sufficiency of the evidence concerning the jury’s adverse
finding on his DTPA claim.
      Question four, answered “no” by the jury, asked:
Did [Boyd and/or Trim-Aire] engage in any false, misleading, or deceptive act or practice that
Robert O’Connor relied on to his detriment and that was a producing cause of damages to
Robert O’Connor?

Producing cause was defined as:
 
an efficient, exciting, or contributing cause that, in a natural sequence, produced the damages,
if any. There may be more than one producing cause.

The following instruction was given regarding types of false, misleading, or deceptive acts or
practices:
      Representing that goods had or would have characteristics that they did not have.
 
Representing that goods were or would be of a particular standard, quality, or grade, or that
goods were of a particular style or model, if they were of another.
 
Failing to disclose information about goods that was known at the time of the transaction with
the intention to induce Robert O’Connor into a transaction he otherwise would not have
entered into if the information had been disclosed.

On appeal, O’Connor asserts legal and factual sufficiency issues about the two “representation”
violations but not of the “failing to disclose” violation.


 He focuses on the fact that the
information Boyd provided in the spec sheets was incorrect, i.e., false, misleading, and deceptive,
and that as a result he was damaged, because he would not have bought the engines for the price
he paid if he had known the full truth.
      O’Connor broadly asserts that under the evidence the answer to Question 4 should have been
“yes.” We point out that we do not know the basis for the jury’s answer, i.e., on which element
or elements it felt O’Connor’s proof failed. See Dealers Elec. Supply v. Pierce, 824 S.W.2d 294,
294 (Tex. App.—Waco 1992, writ denied).
      Our analysis begins with the element of reliance—whether O’Connor successfully proved that
he relied on the information in the spec sheets to make his decision to buy the engines for the price
he paid. If he did not, our inquiry will end.
Legal Insufficiency
      Reviewing only the evidence which supports a finding that O’Connor did not rely on the spec
sheets, we find that two of the spec sheets showed that parts with identical serial numbers were
contained in two separate engines. From such an obvious discrepancy on the face of the spec
sheets a jury could find that, if he had relied on the spec sheets, O’Connor would have read them,
found the discrepancy, and asked for clarification before making his decision to purchase the
engines for the price he paid. No evidence shows that he did. Thus, we find more than a scintilla
of evidence on which the jury could find that O’Connor did not rely on the information in the spec
sheets. Dow Chemical, 46 S.W.3d at 241.
      We overrule issue three.
Factual Insufficiency
      Still focusing on the element of reliance, we review all the evidence about the information in
the spec sheets. In addition to the inference derived from the discrepancies on the face of the spec
sheets, Trim-Aire’s expert testified that it is known in the industry that relying solely on spec
sheets is risky and that the price of an engine would be higher if sellers had to give a warranty that
all the information in the spec sheets is correct. Also, several witnesses testified that the condition
and authenticity of some of the parts cannot be verified without totally disassembling the engines,
which everyone involved knew did not happen. For example, O’Connor’s mechanic, Doig, and
Pete together observed the partially disassembled engines on one occasion. Finally, the only
documentary evidence of the terms of the sale was a two-page invoice which did not incorporate
the spec sheets.
      O’Connor’s argument appears to assume that the jury was bound to believe his naked assertion
that he believed and relied on the information in the spec sheets. But there is other evidence from
which a jury could make a determination. And, it is within the province of the jury to determine
the credibility of the witnesses and the weight to be given their testimony. Brush, 984 S.W.2d at
725-26. The trier of fact may believe one witness and disbelieve another, and may resolve
inconsistencies in the testimony of a witness. McGalliard, 722 S.W.2d at 697. We may not pass
upon a witness’s credibility or substitute our judgment for that of the jury, even if the evidence
might clearly support a different result. Maritime Overseas, 971 S.W.2d at 407. Considering all
the evidence, we find that the jury could have reasonably determined that O’Connor did not rely
on the information in the spec sheets. Thus, the refusal to find a DTPA violation is not so against
the great weight and preponderance of the evidence that it is clearly wrong and unjust. Id.; Dow
Chemical, 46 S.W.3d at 242.
      Based on this determination, we do not reach O’Connor’s arguments about other elements of
his DTPA claim. We overrule issue four.
Issues 8 and 9: Fraud
      O’Connor also broadly complains of the sufficiency of the evidence concerning the jury’s
failure to find fraud.
      Question ten of the charge, answered “no” by the jury, asked: 
Did [Boyd and/or Trim-Aire] commit fraud against Robert O’Connor? 

      Fraud occurs when: 
 
            (a)  A party makes a material misrepresentation,
            (b)  The misrepresentation is made with knowledge of its falsity or made recklessly
without any knowledge of the truth and as a positive assertion,
            (c)  The misrepresentation is made with the intention that it should be acted on by the
other party, and
            (d)  The other party acts in reliance on the misrepresentation and thereby suffers injury.

      “Misrepresentation” means:
 
            (a)  A false statement of fact, or
            (b)  A statement of opinion based on a false statement of fact.
Again, we will focus on a single element. If, under “c,” Boyd and Trim-Aire did not intend for
O’Connor to rely on the spec sheets, the claim fails.


 If O’Connor cannot sustain his sufficiency
claims on that element, his issues fail.
      Evidence of “intent” is usually not susceptible of direct proof. Batto v. Gafford, __ S.W.3d
__, 2003 WL 21994745 *1 (Tex. App.—Waco Aug. 20, 2003, no pet. h.). But circumstantial
evidence may be used to establish any material fact. See Lozano v. Lozano, 52 S.W.3d 141, 149
(Tex. 2001). The material fact must be reasonably inferred from the known circumstances. Id.;
Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1064 (1898) (inference is merely a deduction from
proven facts). "By its very nature, circumstantial evidence often involves linking what may be
apparently insignificant and unrelated events to establish a pattern." Lozano, 52 S.W.3d at 149
(quoting Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 927 (Tex. 1993)). Thus, each piece
of circumstantial evidence must be viewed not in isolation, but in light of all the known
circumstances. Id.; Brinegar v. Porterfield, 705 S.W.2d 236, 238-39 (Tex. App.—Texarkana
1986), aff'd, 719 S.W.2d 558 (Tex. 1986); State Farm Fire & Cas. Ins. Co. v. Vandiver, 970
S.W.2d 731, 736 (Tex. App.—Waco 1998, no pet.). Circumstantial evidence often requires a
fact-finder to choose among opposing reasonable inferences. Lozano, 52 S.W.3d at 148; see e.g.,
Farley v. M M Cattle Co., 529 S.W.2d 751, 757 (Tex. 1975). And, this choice in turn may be
influenced by the factfinder's views on credibility. Lozano, 52 S.W.3d at 148-49. Thus, a jury
is entitled to consider the circumstantial evidence, weigh witnesses' credibility, and make
reasonable inferences from the evidence it chooses to believe. Id. at 149; Benoit v. Wilson, 150
Tex. 273, 239 S.W.2d 792, 797 (1951).
Legal Insufficiency
      Boyd testified that, although he provided the spec sheets and log books to Pete for review, he
also warned Pete they were not verified. Considering only the evidence that supports a finding
that Boyd did not intend for anyone to rely on the spec sheets, Pete’s direct testimony is more than
a scintilla of evidence and therefore is legally sufficient to support the jury’s failure to find fraud. 
Dow Chemical, 46 S.W.3d at 241.
      We overrule issue eight.
Factual Insufficiency
      Reviewing all the evidence that bears on the element of intent, we find that Boyd made the
spec sheets, log books, and partially disassembled engines available to Pete and Doig for
inspection, and Pete and Doig could have learned about many of the discrepancies in the records
before purchase. In addition, although O’Connor denied knowing about it, Boyd testified, as did
McCoslin, that he told Pete the records were not verified, i.e., the records’ reliability was in
question. Furthermore, Boyd offered to redress O’Connor’s complaints by buying the engines
back.
      The jury could have inferred from this evidence that O’Connor failed to prove Boyd and
Trim-Aire intended that he rely on the spec sheets. Again, we note that the jury determines the
credibility of the witnesses and the weight of their testimony. We do not find the adverse finding
on the fraud question to be so against the great weight and preponderance of the evidence that it
is clearly wrong and unjust. Id.; Maritime Overseas, 971 S.W.2d at 407.
      We overrule issue nine.
Issues One and Two: “As Is”
      Both parties have devoted considerable discussion to the enforceablility and effect of the “as
is” provision of the agreement. But we review issues involving an unobjected-to charge under that
charge. Osterberg, 12 S.W.3d at 55. Under this charge, the “as is” provision is applicable only
to question one about the breach-of-contract claim, where it has a specific definition. We have
already discussed how the “as is” provision applies to that claim. As for the fraud and DTPA
claims, the jury was not instructed to consider the “as is” provision. However, we have found
the jury’s failure to find on those two claims to be supported by the evidence, without considering
elements to which the evidence about “as is” would apply. For these reasons, we overrule issues
one and two.
Issue Five: Damages
      Because we overrule O’Connor’s complaints as to all claims, he is not entitled to damages. 
We overrule issue five.
Conclusion
      Having overruled all of O’Connor’s issues, we affirm the judgment.
 
                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Gray, and
      Justice Vance
      (Former Chief Justice Davis not participating)



Affirmed
Opinion delivered and filed December 17, 2003
[CV06]