Neville and C.W. **MARBURGER, E.L. Bathe, Janice and Wilton Hodde, Lois Thaler, Clyde and Robbie Fuchs, Lorenz and Gerdine Fuchs, Ora Nell Muehlbrad, E.J. Muehlbrad, Jeanell Dallmeyer, Joyce and Don Oelfke, Thelma Neutzler, Tammie Brown, Linda Gaskamp, Delbert Schmidt, Roy Schmidt, Roger Huebner,Wayne Huebner, Edwin And Elfrieda Truede, and Joyce Oelfke, Trustee, Appellants,**

v.

**SEMINOLE PIPELINE COMPANY and Coates Field Services, Inc., Appellees.**

No. 14–96–00158–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 9, 1997.

John D. Pieratt, Austin, for appellants.

Sidney Levine, Carl E. Clover, Jr., Sealy, for appellees.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

The following opinion is substituted in place of that issued on June 19, 1997.

In this fraud case, appellants (collectively, the "landowners") appeal a summary judgment granted in favor of Seminole Pipeline Company ("Seminole") and Coates Field Services, Inc. ("Coates") on the ground that there are genuine issues of material fact. We affirm in part and reverse and remand in part.

### Background

Seminole is a common carrier pipeline company with a right of eminent domain to condemn property for pipeline right-of-way construction. The pipeline at issue in this case was to transport highly volatile liquids from Seminole, Texas to Mont Belvieu, Texas. Seminole contracted with Coates to provide right-of-way agents to negotiate and acquire pipeline easements and damage releases for the pipeline from each of the landowners. The landowners alleged that Coates' agents represented that Seminole had been and was presently offering everyone the same price per rod [1] for an easement

---

**1.** A "rod" is a unit of measure of length equal to 16½ lineal feet. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1967 (3d ed.1993).

($25.00) and for damages[2] ($10.00). The landowners claim that the right-of-way agents assured each of them that this was a final offer, and that if they did not accept it, Seminole would begin condemnation proceedings. The landowners all accepted the offers and executed easements and releases.

Subsequently, the landowners discovered that Seminole, through its right-of-way agents,[3] had paid more for easements and releases to neighboring landowners without resorting to formal condemnation proceedings than it had paid to them. The landowners hired legal counsel and sent Seminole a demand letter asking for rescission and/or damages for the alleged misrepresentation that all landowners would be paid the same amount for easements and damage releases. The landowners ultimately filed suit in Washington County, where all of the affected property is located, alleging fraud and negligent misrepresentation. Seminole and Coates filed motions for summary judgment on both the landowners' claims for recovery and as to the lack of standing of four of the named plaintiffs, Don Oelfke, Wilton Hodde, Tammie Brown, and Linda Gaskamp. The trial court granted the summary judgment without stating the grounds upon which it was granted.

In a single point of error, the landowners claim that the summary judgment should not have been granted because there were fact issues concerning whether Seminole misrepresented (1) that all landowners had been and would be paid the same amounts for their easements and releases, (2) that this offer was non-negotiable, and (3) that Seminole would seek condemnation if the offer was not accepted.

## Standard of Review

 A movant for summary judgment has the burden to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). To be entitled to summary judg-

ment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). In reviewing a summary judgment, evidence favorable to the nonmovant is taken as true, and all reasonable inferences are indulged in the nonmovant's favor. *Id.* A summary judgment may be affirmed on any of the movant's theories which has merit. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 627 (Tex.1996).

## Bond Defect

 As a preliminary matter, Seminole contends that, because the cost bond on appeal reflects only Ora Nell Muehlbrad as principal, the other landowners who are not listed as principals are not parties to this appeal. An appellant perfects an appeal when a bond is filed. TEX.R.APP. P. 46(a). An appellate court has jurisdiction over an appeal where any appellant files an instrument in a bona fide attempt to invoke appellate court jurisdiction. *Grand Prairie Sch. Dist. v. Southern Parts Imports, Inc.,* 813 S.W.2d 499, 500 (Tex.1991). Thus, a *defective* bond does not defeat the jurisdiction of the appeals court because an appellant should be given an opportunity to correct it before the court of appeals may dismiss the appeal. TEX.R.APP. P. 83; *Davis v. Jefferies,* 764 S.W.2d 559, 560 (Tex.1989); *Grand Prairie,* 813 S.W.2d at 500; *see Maxfield v. Terry,* 888 S.W.2d 809, 811 (Tex.1994). On proper motion to dismiss the appeal, the appellant may be required to file a new bond to cure any defects. TEX.R.APP. P. 46(f); *Davis,* 764 S.W.2d at 560. In this case, Seminole waived any defect in the landowners' appeal bond by failing to file such a motion to dismiss. *See Davis,* 764 S.W.2d at 560; *Evans v. Evans,* 809 S.W.2d 573, 574 (Tex.App.—San Antonio 1991, no writ) ("When there is a defect in substance or form in an appeal bond, *on motion to dismiss for this defect,* the appel-

2. The damage payments were for damage to pastures and crops from installation of the pipeline.

3. For purposes of the summary judgment at issue, Seminole has not denied the alleged agency

relationship with Coates. Therefore, the opinion will refer to both as "Seminole" unless there is a need to distinguish between them.

late court may allow the defect to be corrected by filing a new bond.").

## Parole Evidence

■■■ As another preliminary matter, Seminole argues that the allegation that it made representations of the price it would pay all landowners cannot be supported without recourse to inadmissible parole evidence. Extrinsic evidence is ordinarily not admissible to add to, vary, or contradict the terms of a written contract that is clear on its face. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex.1995). However, extrinsic evidence is admissible to show fraud. *See Santos v. Mid–Continent Refrigerator Co.*, 471 S.W.2d 568, 569 (Tex.1971). Therefore, parole evidence is admissible in this case to show whether the landowners were fraudulently induced to grant the easements and sign the releases.

## Non-negotiable Offer

■■■ The landowners argue that Seminole fraudulently induced them to enter into the right-of-way contracts by misrepresenting that the $35 per rod offer for each easement and release was non-negotiable. Seminole responds that any such alleged representation was merely a bargaining tactic.

■■■ The elements of fraud are a material misrepresentation,[4] that was false, that was either known to be false when made or was asserted without knowledge of the truth, that was intended to be acted upon, that was relied upon,[5] and that caused injury. *Formo-*

sa *Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 40 Tex. Sup.Ct. J. 877, 881–82, 1997 WL 378129 (July 9, 1997). The elements of a claim for negligent misrepresentation are (1) a representation made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991). Because each of these elements must be established in order for there to be recovery, the absence of any element is grounds for summary judgment. *See Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977).

The central question presented by this issue is whether statements of a party's bargaining posture can form the basis of a misrepresentation claim. In *Keasler*, landowners sued a pipeline company for fraud in representing, among other things, that its offer to buy their mineral rights and an easement was non-negotiable when, in fact, it was subject to compromise. *See Keasler v. Natural Gas Pipeline Co. of America*, 569 F.Supp. 1180, 1187 (E.D.Tex.1983), *aff'd*, 741 F.2d 1380 (5th Cir.1984). In holding that any such misstatements made before or during the negotiations were not

4. A misrepresentation is *material* if it induced the complaining party to enter into the contract. *See American Medical Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 338 (Tex.App.—Houston [14th Dist.] 1991, no writ). A misrepresentation may be material even if it is not the *sole* cause of entering into the contract, so long as the complaining party relied on the misrepresentation. *See Miller v. Latham*, 276 S.W.2d 858, 866 (Tex.Civ.App.—Amarillo 1954, writ ref'd n.r.e.).

5. In order to prove *reliance*, the party claiming fraud must show that he knew of and was induced by the defendant's representations. *Natland Corp. v. Baker's Port, Inc.*, 865 S.W.2d 52, 68 (Tex.App.—Corpus Christi 1993, writ denied). However, the representations relied upon need not have been the sole inducement for entering into the transaction, nor need the plaintiff have

relied on all of the representations made. *First State Bank v. Olde Colony House*, 414 S.W.2d 221, 223–224 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e.). In addition, a party may not establish fraud in the inducement of a contract if the party's reliance on the misrepresentation in question was patently unreasonable or unjustified. *See, e.g., Eagle Properties v. KPMG Peat Marwick*, 912 S.W.2d 825, 827 (Tex.App.—El Paso 1995, writ denied) (holding that representation made after transaction is complete cannot give rise to fraud in the inducement because it could not have been relied upon); *Coastal Corp. v. Atlantic Richfield Co.*, 852 S.W.2d 714, 720–21 (Tex.App.—Corpus Christi 1993, no writ) (holding that continuing to negotiate after learning of alleged fraud of one of the sellers precluded prospective buyer from recovering for fraud).

material to the contracts, the trial court said:

> While the representation of Natural [the pipeline company] that its offer was "non-negotiable" may have been falsely made to induce the offerees to assent, it was nonetheless a negotiating ploy. The representation was neither material nor basic to the transaction; in no sense were the offerees entitled to rely thereon. To determine whether Natural's offer was actually non-negotiable, the offerees had only to make a counter-offer. That some failed to do so and simply acquiesced to the offer of Natural is no ground for recovery.

*Id.*[6]

We agree with the reasoning of *Keasler* that representations that an offered price is the offeror's best or final offer, or is non-negotiable, are not actionable as a matter of law. Accordingly, this portion of the landowners' point of error is overruled and the summary judgment in this case is affirmed with regard to any claim of fraudulent inducement or misrepresentation based on any alleged statements to the effect that Seminole's offer was a final, best, or non-negotiable offer.

### Same Price Offered to All Landowners

The landowners also claim that Seminole fraudulently induced them to enter into the right-of-way contracts by misrepresenting that all landowners had been and would be paid the same price, i.e., $35 per rod for the easement and damage release, without going to condemnation. The record contains affidavits and interrogatory answers stating that Seminole's representatives represented that it was paying all landowners the same amount for the easements, that Seminole would not negotiate on this price, and that if a landowner would not execute the easements and damage releases for the price that Seminole was paying, Seminole would condemn the landowner's property and the landowner would have to go through the condemnation process.

The record also contains evidence that, after receiving a letter from one landowner claiming that he had heard that Seminole was paying more than $35.00 to other landowners, Seminole responded, "Seminole Pipeline County has not paid any landowner in Lee County $75/rod. Our price is and has been $35/rod, $25 for an easement and $10 for damages." In addition, there is evidence that some landowners attempted to counteroffer and Seminole refused to pay more than $35. Moreover, Seminole's counsel stated at the summary judgment hearing that the court could take as true that Seminole had paid other landowners more than $35.00 per rod.

Seminole argues that, as to any particular offer, an alleged representation concerning what was paid in *other* transactions is not material to what would be paid in the immediate transaction. In addition, Seminole contends that such a representation was also within it's legal right to bargain, and that the landowners could thus not rely on it in entering into the contracts as a matter of law.

Where multiple transactions are entered into between a single offeror and various unaffiliated offerees, each transaction might be negotiated independently from the others based on the individual circumstances. In such a case, the offeror's representations to one offeree about prices or other terms offered to or accepted by other offerees are not material to the negotiation with the first offeree to the extent they provide only comparative data reflecting, at most, what the offeror *might* be willing to agree to with the first offeree, but not otherwise directly affecting the terms that the first offeree can negotiate for himself.

■ However, where a representation is made that all landowners had been and necessarily would be offered the same set price, as alleged in this case, a landowner might reasonably infer from it that factors beyond Seminole's mere *willingness* to compromise affected its ability to do so; *i.e.*, because Seminole was representing to landowners that it would treat them all alike, it was

6. *See also Fisher Controls Intern., Inc. v. Gibbons,* 911 S.W.2d 135, 143 (Tex.App.—Houston [1st Dist.] 1995, writ requested) (holding that, as a matter of law, a seller has no duty to tell a prospective buyer how many people have previously refused to buy the product).

*obligated* to do so. To the extent a particular landowner nevertheless attempted to counteroffer or negotiate further, Seminole's alleged representation did not induce that landowner to refrain from seeking a more favorable agreement, and reliance on the representation would be negated. On the other hand, where the representation allegedly induced the landowner to refrain from negotiating further, and the foregoing inference is indulged in favor of the landowner, as we must do, reasonable minds could differ on the materiality of the representation to the landowner in determining whether to counteroffer and pursue further negotiations. Under these circumstances, materiality is a fact question which is not negated as a matter of law. Therefore, summary judgment could not properly be granted that a same-price representation was not material to landowners who allegedly refrained from negotiating further in reliance upon it. Accordingly, this portion of the landowners' point of error is sustained.

### Threat of Condemnation and Duty of Good Faith

■ The landowners further argue that they were induced to enter into the easements and releases by Seminole's threats of condemnation if its offers were not accepted. Seminole responds that its representation that it would initiate condemnation proceedings for the easements was fully within its legal rights.

By statute, certain corporations have eminent domain authority to acquire real property for public use. *See* TEX. PROP.CODE ANN. § 21.012 (Vernon 1996).[7] It is undisputed in this case that Seminole is a common-carrier pipeline company with such a right of eminent domain. *See* TEX. NAT. RES.CODE ANN. § 111.019 (Vernon Supp.1997).[8] The granting of such authority to Seminole has thus been deemed by the Legislature to be sound policy. In this case, therefore, there was no question that Seminole would ultimately obtain the landowners' easements, but only an issue as to the price and manner of doing so.

Seminole essentially gave the landowners a choice whether to accept its initial offer, pursue a higher offer, or allow the condemnation process to determine the valuation issue. Having made that choice in favor of accepting Seminole's offer, the landowners cannot claim to have then been coerced by the prospect of a judicial determination of value, while now seeking that very alternative in this lawsuit. Such a result would, in effect, enable landowners to circumvent condemnation by collaterally attacking their conveyance agreements after the fact on the ground that the offeror had failed to make them a better offer. Therefore, because the Legislature has determined that obtaining the easements and releases by condemnation was within Seminole's legal rights, Seminole was entitled to exercise that right by making it the alternative to acceptance of its offers.

■ The landowners also argue that, by threatening them with the right of eminent domain, Seminole violated the good faith and bonafide offer standards of the eminent domain statute. A petition filed by a condemning entity to begin condemnation proceedings must state, among other things, "that the entity and the property owner are unable to agree on the damages." *See* TEX. PROP.CODE ANN. § 21.012 (Vernon 1984).[9] This condi-

---

7. *See also* TEX. CONST. art. I, § 17 (No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person).

8. Section 111.019, entitled "Right of Eminent Domain," provides:

 (a) Common carriers have the right and power of eminent domain.

 (b) In the exercise of the power of eminent domain granted under the provisions of Subsection (a) of this section, a common carrier may enter on and condemn the land, rights-of-way, easements, and proper-

ty of any person or corporation necessary for the construction, maintenance, or operation of the common carrier pipeline.

TEX. NAT RES.CODE ANN. § 111.019 (Vernon Supp. 1997).

9. Section 21.012 provides in part:

 (a) If ... a corporation with eminent domain authority, ... wants to acquire real property for public use but is unable to agree with the owner of the property on the amount of damages, the condemning entity may begin a condemnation proceeding by filing a petition in the proper court.

 (b) The petition must:

tion refers to a bona fide attempt to agree on damages, and includes a bona fide offer by the condemnor to pay the estimated true value of land. *State v. Schmidt,* 894 S.W.2d 543, 544–45 (Tex.App.—Austin 1995, no writ). Although the condemning authority must engage in good faith negotiations to acquire the property prior to the filing of suit under section 21.012, this requirement has been held to be one of jurisdiction only.[10]

■ Similarly, a common-law tort duty of good faith does not exist in every contract but arises only between parties having certain special relationships. *Stewart Title Guaranty Co. v. Aiello,* 941 S.W.2d 68, 71 (Tex.1997); *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 697 (Tex.1994). We have found no authority that section 21.012 creates an independent cause of action, or that the relationship between the parties in this case is such that a duty of good faith existed between them. *See Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 599 (Tex.App.—Austin 1991, writ denied). Accordingly, this portion of the landowners' point of error is overruled, and the summary judgment is affirmed with regard to any claim of fraudulent inducement or misrepresentation based on an alleged threat of condemnation if Seminole's offer was not accepted.

### Standing

In its motion for summary judgment, Seminole also asserted that Dan Oelfke, Wilton Hodde, Tammie Brown, and Linda Gaskamp lacked standing to sue Seminole because they did not own any interest in the property in

> (1) describe the property to be condemned;
> (2) state the purpose for which the entity intends to use the property;
> (3) state the name of the owner of the property if the owner is known; and
> (4) *state that the entity and the property owner are unable to agree on the damages.*
>
> Tᴇx. Pʀᴏᴘ.Cᴏᴅᴇ Aɴɴ. § 21.012 (Vernon 1984).

**10.** *See State v. Schmidt,* 894 S.W.2d 543, 545 n. 1 (Tex.App.—Austin 1995, no writ); *Texas–New Mexico Power Co. v. Hogan,* 824 S.W.2d 252, 253–54 (Tex.App.—Waco 1992, writ denied); *see also State v. Dowd,* 867 S.W.2d 781, 783 n. 1 (Tex.1993). There is no such jurisdictional issue in this case because condemnation proceedings were never filed with regard to these landowners.

issue. The landowners assert that the trial court erred in granting Seminole's motions for summary judgment because these landowners have standing to sue Seminole. We address this issue because the summary judgment does not indicate whether it was entered against these landowners based on standing, the other summary judgment issues, or both.

■ In order to maintain a suit, a person must have standing to litigate the matters in issue. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). One has standing to sue if: (1) he has sustained, or is in immediate danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused him some injury in fact; or (5) he is an appropriate party to assert the public's interest in the matter as well as his own interest. *Rodgers v. RAB Investments, Ltd.,* 816 S.W.2d 543, 546, (Tex.App.—Dallas 1991, no writ).[11]

■ As to both Oelfke and Hodde, the land upon which Seminole secured its easement was their wives' separate property,[12] and neither wife deeded any interest to her husband. Oelfke claims that he advanced community funds to repair some of the damage caused by the construction of Seminole's pipeline on his wife's land. Although, if true, this expenditure may have created a right of reimbursement from Mrs. Oelfke's separate property estate to the Oelfkes' community

**11.** Standing requires some interest peculiar to the person individually and not as a member of the general public. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). An aspect of justiciability, standing is determined by whether the plaintiff has such a personal stake in the outcome of the controversy as to warrant his invocation of the court's jurisdiction and to justify the exercise of the court's remedial powers on his behalf. *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

**12.** A spouse's separate property includes property acquired by the spouse during marriage by gift, devise, or descent. Tᴇx. Cᴏɴꜱᴛ. art. 16, § 15; Tᴇx Fᴀᴍ.Cᴏᴅᴇ Aɴɴ. § 5.01(a)(2) (Vernon 1996). Oelfke's wife, Joyce, inherited the property from her parents, and Hodde's wife, Janice, was deeded the property as a gift from her parents.

estate, it did not create an interest in her real property. *See Vallone v. Vallone,* 644 S.W.2d 455, 458–59 (Tex.1983). Nor is there any indication that such a right to reimbursement would itself be affected by the amount paid for the easement and release on Mrs. Oelfke's property. Having thus been presented no basis to infer that Oelfke has any interest in his wife's real property or in the claims against Seminole otherwise, we overrule the landowners' point of error as to his standing.

 As to Hodde, one of the landowners' responses to the motions for summary judgment referenced deposition testimony in which Hodde stated that he held a lease interest in his wife's property. Seminole's motion for summary judgment challenged Hodde's standing based only on his lack of a fee interest in the property, and did not address a possible leasehold interest.[13] Therefore, summary judgment was not proper as to a lack of standing by Hodde and this portion of the landowners' point of error is sustained.

As to Brown and Gaskamp, although each owns a divided interest in property that was once part of a larger tract, neither owns an interest in the remaining portion on which the easements were granted. Nor did Seminole contact, negotiate with, or make representations to either of them. Brown and Gaskamp point to an affidavit executed by their mother stating that she had orally represented that she would convey all of her surface property to them upon her death. However, such oral statements are not sufficient to vest Brown and Gaskamp with an enforceable interest in real property. *See* TEX. PROP.CODE ANN. § 5.021 (Vernon 1984).[14] Therefore, because the lawsuit affects only their mother's property, any interest Brown and Gaskamp may have in it is a mere expectancy and insufficient to afford them standing as plaintiffs. Accordingly, the landowners' point of error with regard to the standing of Brown and Gaskamp is overruled, and the trial court's judgment is affirmed with respect to their standing.

### Sanctions

 In the prayer for relief in their brief, the landowners ask this court to reverse the sanctions order entered by the trial court against them. However, the brief presents no argument or legal authority to support this assertion. *See* TEX.R.APP. P. 74(f). Because this request thereby presents nothing for our review, it is overruled.

Accordingly, the judgment of the trial court is reversed and remanded as to the landowners' claims relating to the alleged representation of a single price being offered to all landowners, and the standing of Hodde, and the remainder of the judgment is affirmed.

---

13. A lessee is generally entitled to share in a condemnation award when part of the leasehold interest is lost by condemnation. *See Elliott v. Joseph,* 163 Tex. 71, 351 S.W.2d 879, 883–84 (1961); *G.P. Show Productions, Inc. v. Arlington Sports Facilities Dev. Auth., Inc.,* 873 S.W.2d 120, 123 (Tex.App.—Fort Worth 1994, no writ); *Texaco Ref. and Mktg., Inc. v. Crown Plaza Group, Inc.,* 845 S.W.2d 340, 342 (Tex.App.—Houston [1st. Dist.] 1992, no writ).

14. In addition, a conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing. TEX. PROP.CODE ANN. § 5.021 (Vernon 1984).