252 S.W.3d 673 (2008)
Robert A. RAKOWSKI, Appellant, and Clear Creek Civic Association, Inc., Appellants/Cross-Appellee,
v.
COMMITTEE TO PROTECT CLEAR CREEK VILLAGE HOMEOWNERS' RIGHTS and Preserve Our Park, Appellee/Cross Appellant.
No. 14-05-01143-CV.
Court of Appeals of Texas, Houston (14th Dist.).
April 3, 2008.
*675 Darren R. Rice, Michael Dennis Wisdom, Charles A. Daughtry, Houston, for appellants/cross-appellee.
A.G. Crouch, Alvin, Ervin A. Apffel, Jr., Galveston, for appellee/cross-appellant.
Panel consists of Justices FOWLER, FROST, and EDELMAN.[*]

SUBSTITUTE PLURALITY OPINION
RICHARD H. EDELMAN, Senior Justice (Assigned).
Appellants' motion for rehearing is overruled, the Plurality Opinion issued in this case on December 20, 2007 is withdrawn, and the following Substitute Plurality Opinion is issued in its place.
In this subdivision property dispute, the parties each appeal a summary judgment entered for the other on the grounds that the trial court erred in ruling that: (1) the Clear Creek Village Subdivision's (the "Subdivision") restrictive covenants attached to the Claiborne Park property (the "Park") and (2) the Clear Creek Village Civic Association (the "Association") was the record title holder to the Park. We affirm.

Background
In 2004, the Committee to Protect Clear Creek Village Homeowners' Rights and Preserve Our Park (the "Committee") filed suit to prevent the Association from selling the Park to Robert Rakowski, who intended to use it for commercial purposes. The parties filed cross motions for summary judgment, and the trial court granted separate summary judgments declaring, respectively, that: (1) the Association is the lawful record title holder of the Park and thereby has the right to convey it; but (2) the Subdivision's Restrictions, Covenants, and Conditions (the "restrictions") apply to the Park, prohibit its use for any commercial purpose, and require the Association to maintain it solely for recreational use.

*676 Standard of Review
When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex.2006). Where, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review both sides' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.2005).
We review a trial court's interpretation of a restrictive covenant de novo. Buckner v. Lakes of Somerset Homeowners Ass'n, Inc., 133 S.W.3d 294, 297 (Tex.App.-Fort Worth 2004, pet. denied). Restrictive covenants are subject to the general rules of contract construction. Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex.1998). Therefore, in construing a restrictive covenant, our primary task is to determine the drafter's intent and to liberally construe the language of the restrictions to give effect to their purposes and intent and to harmonize all of the provisions so that none are rendered meaningless.[1]

Application of Restrictions
The Association and Rakowski ("appellants") challenge the summary judgment, holding that the restrictions apply to the Park, on the grounds that: (1) the Park is not included within the platted boundaries of the Subdivision; (2) the restrictions are not specifically set forth in the deed that purports to convey the Park from Bill Williams to the Association's predecessor; (3) the restrictions' enabling language states that they apply only to Subdivision lots; and (4) the restrictions allow subsequent owners to take without the restrictions.
The restrictions include a provision titled "Recreational Area" that references a "Recreation Area" labeled on the recorded plat for Section 1 of the Subdivision. The parties do not dispute that this "Recreational Area" in the restrictions, and this "Recreation Area" on the plat, each refer to the Park. The restrictions reserve this area for the use and enjoyment of those owning or occupying residential lots in all current and future sections of Clear Creek Village, of which at least six were added in the ensuing years, with the deed of trust and restrictions, covenants, and conditions for each referencing the Park as a recreational area and requiring dues be spent for its maintenance.
In support of their contention that the Park is not included in the Subdivision boundaries, appellants rely on Sills v. Excel Servs., Inc., 617 S.W.2d 280, 284 (Tex. Civ.App.-Tyler 1981, no writ). There, homeowners in a subdivision sought to enjoin the construction of an apartment complex by enforcing a restrictive covenant that allowed lots to be used only for single family residences. Id. at 281-82. The court held that the restrictive covenants did not apply to the tract in question because: (1) the tract was not within the dark line delineating the subdivision's outer boundaries; (2) inclusion of the tract in the subdivision would have required flood plain data to be submitted, which was not done; and (3) the restrictions referred only to the subdivision lots and failed to show any scheme or plan of development imposing the restrictions on property not *677 encompassed within the subdivision's boundaries. Id. at 283-84.
In contrast to Sills, and applying part of its rationale, the restrictions in this case demonstrate "a scheme or plan of development imposing restrictions on property not encompassed within the subdivision's boundaries." Id. (noting the property at issue was not only "clearly outside" the subdivided tract, but "the record completely negates the existence of any scheme or plan of development"). The appurtenant property is arguably outside the dark line that demarcates the lots of the subdivision, but the restrictions specifically reference it, and a review of the recorded map of the subdivision clearly marks that section as Recreation Area, putting any person on notice that it is part of a plan or scheme of development. Any would-be purchaser could only determine the nature of this designation by reading the subdivision's restrictions.
While appellant contends that there is no indication of these restrictions on the map of Braskora Gardens, the record reveals only a map of an area too large to show the necessary level of detail, and does not show any of the subdivisions into which Braskora Gardens was subsequently parsed, including Clear Creek Village. The record contains no other map of sufficient detail showing the Recreation Area as anything but that, and that would fail to put a would-be purchaser on notice that he must look to the restrictions. See Anderson v. McRae, 495 S.W.2d 351, 359 (Tex.App.-Texarkana 1973, no writ.) (noting that an easements or other appurtenant right is conveyed when shown or referred to on a plat, and that "all of the appurtenances ascertainable by the map" are conveyed). The fact that the Park was not described in detail by metes and bounds is immaterial. Id. (delineating some of the areas in contest as "area reserved for recreation and roadway"); see also Spencer v. Levy, 173 S.W. 550, 557 (Tex.App.-Austin 1914, writ ref'd).[2]
In this case, our record contains a general plan of development expressly imposing the restrictions on the Park.[3] Therefore, even if the Park is outside the platted boundaries of the Subdivision, that alone does not preclude the application of the restrictions, and appellants' first contention is overruled.
Appellants' second contention, that the restrictions are not recited in the deed, fails to note that a property may become subject to the restrictions and covenants of a general plan of development under a number of scenarios, including: (1) by grant; (2) by an express reference to the restrictions and covenants in the conveyance documents, which are duly recorded;[4] and/or (3) when the parties otherwise have *678 constructive knowledge of the restrictions through the recorded property records.[5] As such, even if the Association and Rakowski are correct about the deed, an attack on the deed is insufficient to find that the restrictions and covenants are inapplicable to the Park. Therefore, appellants' second contention is overruled.
Regarding appellants' third contention, the restrictions' enabling language specifies that the uniform plan of development shall govern "the use, development, improvement and sale of lots" and "does hereby place and impose the following restrictions, covenants, and conditions upon and against the lots." The Association argues that this language limits the application of the restrictions only to actual subdivision lots. However, this fails to read the restrictions as a whole and fails to give meaning to every provision, particularly those expressly referring to the Park.[6] Therefore, appellant's third contention is overruled.
Contrary to appellants' fourth contention, the restrictions allow future owners of the Park to take it free and clear of the restrictions only if the property is sold at a foreclosure sale in the event of default on a loan used to improve or beautify the Park for the benefit and enjoyment of the persons entitled to use it. Therefore, this clause is not evidence that the restrictions do not apply, as appellants argue, but merely a mechanism to enable the Subdivision to obtain debt to improve the Park by allowing such debt to be secured by a lien. Because appellants' issue does not demonstrate that the trial court erred by granting summary judgment that the restrictions apply to the Park, it is overruled.[7]

Ownership
The Committee challenges the trial court's ruling, that the Association was the lawful title holder to the Park, because its purported transferor, Bill Williams, possessed no conveyable interest in the Park property, having conveyed it earlier to Bill Williams Construction Company.[8] The Association responds that the Committee does not have standing to challenge *679 the ownership of the Park property because the Committee has no claim to ownership in the Park.[9]
In a subdivision unified by deed restrictions, the individual property owners have standing to challenge a planned action of the neighborhood association by virtue of their ownership of property in that neighborhood.[10] Similarly, the deed restrictions in this case allow "any person owning or having an interest in any residential lot in the Clear Creek Village Section I to institute and prosecute any proceeding at law or in equity to abate, prevent, or enjoin any such violation."
However, the Committee can be aggrieved, and thereby have standing to contest matters, concerning the Park only if the Association owns the Park on behalf of the Subdivision in which the Committee members are property owners.[11] If the Committee is correct that there is a defect in the Association's title to the Park, such that the Association does not own it, then the Committee thereby has no standing to contest any issues concerning ownership of the Park. Because the Committee's challenge cannot be sustained unless the Committee lacks standing to assert it, we are without jurisdiction to consider it.[12] *680 Therefore, the Committee's challenge to the summary judgment that the Association is the rightful owner of the Park is overruled, and the judgment of the trial court is affirmed.
FOWLER, J., concurring without an opinion.
FROST, J., concurring and dissenting.

SUBSTITUTE CONCURRING AND DISSENTING OPINION[1]
KEM THOMPSON FROST, Justice.
There is no merit in the appellate challenges asserted by appellants Robert A. Rakowski and Clear Creek Village Civic Association, Inc. (the "Association") against the trial court's summary judgment declaring that the Clear Creek Village Subdivision restrictive covenants limit the use of the Claiborne Park property to recreational purposes for the exclusive use and enjoyment of subdivision homeowners. Accordingly, I concur in that portion of the court's judgment. However, the plurality erroneously concludes that appellee Committee to Protect Clear Creek Village Homeowners' Rights and Preserve Our Park (hereinafter the "Committee") lacks standing to contest any issues regarding ownership of the park. Instead of finding a lack of standing, this court should reverse and remand because the trial court erred in granting the Association's motion for summary judgment in which the Association sought a declaration that it is the legal and lawful record title owner of Claiborne Park. To the extent the court does not, I respectfully dissent.[2]
The Committee does not lack standing to contest any issues concerning the park's ownership based on the Committee's position as to who owns the park.
The plurality affirms the trial court's declaratory judgment regarding title to Claiborne Park on the stated ground that the Committee lacks standing based on its position on the merits of this title issue. However, the plurality errs in basing its standing analysis on the Committee's position on the merits.[3]
*681 The plurality does not discuss the general legal standard for determining standing. A party has standing when it is personally aggrieved. See Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 848-49 (Tex. 2005). The general test for standing in Texas requires a real controversy between the parties that actually will be determined by the judicial declaration sought.[4]See id.; Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661-62 (Tex.1996). The Committee has organizational standing if (1) its members otherwise would have standing to sue in their own right; (2) the interests the Committee seeks to protect are germane to its purpose; and (3) neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit. See Texas Ass'n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 447 (Tex.1993). Because no party sought to dismiss any of the Committee's claims in the trial court for lack of standing, this court must construe the Committee's petition in its favor and, if necessary, review the entire record to determine if any evidence supports standing. See id. at 446.
In its live pleading, the Committee objected to the sale of Claiborne Park and sought to enjoin the closing of the proposed sale. The Committee made the following allegations:
(1) The sale would violate the restrictions, covenants, and conditions imposed by a document recorded in February 1964;
(2) The sale would deny the residents of Clear Creek Village (which would include all of the Committee's members) a recreational area and access to a recreational area;
(3) The sale would lower the residents' property values;
(4) The sale would substantially interfere with their use and enjoyment of their property;
(5) The sale would infringe on their privacy; and
(6) The sale would adversely impact the flood control and drainage plan of the surrounding property.
Although the Association asserts that the Committee lacks standing because the Committee did not seek a declaration that it or its members own Claiborne Park, a request for such relief is not necessary if the legal standard is satisfied by another interest that would be aggrieved by the sale of the park property. See Nootsie, Ltd., 925 S.W.2d at 662 (rejecting argument that county appraisal district lacked standing to assert that statute was unconstitutional, even though appraisal district did not possess any constitutional rights that statute could violate, because district had interest in not enforcing unconstitutional *682 statute that gave rise to standing to determine statute's constitutionality). The Committee sufficiently alleged that, if the Association has title and the ability to transfer the park property to Rakowski, then the members of the Committee would be personally aggrieved, giving rise to a real controversy between the parties that actually would be determined by the judicial declaration sought. Therefore, the members of the Committee otherwise would have standing to sue in their own right. See id. The plurality and the Association do not take issue with the second and third prongs of organizational standing; and the record reflects that these elements are satisfied. Thus, the Committee has standing, and this court has jurisdiction over the cross-appeal.
The plurality cites Marburger v. Seminole Pipeline Co. for the proposition that a party must have been a past or present owner of land to have standing to challenge the transfer of title to the land. See ante at p. 678, n. 9 (citing Marburger v. Seminole Pipeline Co., 957 S.W.2d 82, 89-90 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) for this proposition). However, this court in Marburger stated that a party can establish standing by showing, among other things, that (1) he has sustained, or is in immediate danger of sustaining, some direct injury as a result of the wrongful act of which he complains; or (2) he has a direct relationship between the alleged injury and the claim sought to be adjudicated; or (3) he has a personal stake in the controversy. See Marburger, 957 S.W.2d at 89. The Marburger court did not state that a party must be a landowner before it could have standing.[5]See id. The Marburger court did not address whether a party had standing to challenge the transfer of title to the land. See id. Rather, the Marburger court addressed whether certain parties had standing to assert claims that a pipeline company defrauded them into selling the company an easement across certain land. See id. at 84-90. The Marburger court concluded that the trial court did not err in finding that certain plaintiffs lacked standing because there had been no showing that they had any interest in the land over which the easements were granted, and because they did not show that they had any interest in the fraud claims. See id. at 89-90. The opinion in Marburger supports the proposition that the Committee has standing in this case.[6]
*683 The trial court erred in granting the Association's motion for summary judgment in which the Association sought a declaration that it is the legal and lawful record title owner of the park.
As to the merits, the issue is whether the trial court correctly granted summary judgment that, as a matter of law, the Association is the legal and lawful record title owner of Claiborne Park.[7] In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex.2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence.[8]Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex.2007).
In its motion, the only basis upon which the Association asserted that it holds record title to the park property is a deed recorded on June 19, 1969 (hereinafter "1969 Deed"). The Association claims its alleged predecessor received title to the park property from William H. Williams in the 1969 Deed. The Association, however, did not prove as a matter of law that Williams held title to the park property when he executed the 1969 Deed. Therefore, the Association's motion and summary-judgment evidence do not facially establish its right to judgment as a matter of law. In addition, even considering all of the summary-judgment evidence under the applicable standard of review, this evidence does not prove as a matter of law that the Association is the legal and lawful record title owner of Claiborne Park.[9] Therefore, the trial court erred in granting summary judgment making this declaration as a matter of law.[10] This court *684 should reverse this part of the trial court's judgment and remand for further proceedings.
NOTES
[*] Senior Justice Richard H. Edelman sitting by assignment.
[1] See Wilmoth v. Wilcox, 734 S.W.2d 656, 658 (Tex.1987); Village of Pheasant Run Homeowners Ass'n, Inc. v. Kastor, 47 S.W.3d 747, 750 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); see also Tex Prop.Code Ann. § 202.003(a) (Vernon Supp.2007); Luckel v. White, 819 S.W.2d 459, 462 (Tex. 1991).
[2] In Anderson, the property also had a detailed recital of the designation of the property for the subdivision and the use of the lot owners. Anderson, 495 S.W.2d at 359. While this detailed designation is not reflected on the map of Clear Creek Village in the present case, a buyer is nonetheless put on notice by the map to look at the restrictions which do contain a detailed designation.
[3] Restrictions may also apply to the Park where parties who purchased homes in the subdivision were induced to make such a purchase by reference to the plat upon which the appurtenant right is shown or referred to. See Forister v. Coleman, 418 S.W.2d 550, 559-60 (Tex.App.-Austin 1967, writ ref'd n.r.e.).
[4] See Cooksey v. Sinder, 682 S.W.2d 252, 253 (Tex. 1984) (noting that purchasers are charged with knowledge of the contents of recorded instruments and the terms of deeds in their chain of title); Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908 (Tex. 1982) (noting that a purchaser is bound by every recital, reference, and reservation contained in, or fairly disclosed by, any instrument which forms an essential link in the chain of title under which he claims).
[5] See Evans v. Pollock, 796 S.W.2d 465, 466 (Tex. 1990); Inwood North Homeowners' Ass'n, Inc. v. Harris, 736 S.W.2d 632, 635 (Tex. 1987) (noting that a purchaser with constructive notice of restrictive covenants becomes bound by them); Burns v. Wood, 492 S.W.2d 940 (Tex. 1973); see generally Lehmann v. Wallace, 510 S.W.2d 675, 680 (Tex. Civ.App.-San Antonio 1974, writ ref'd n.r.e.) (noting that a general plan may "be established in various ways, such as by express covenant, by implication from a filed map, or by parol representations . . . or the grantor pursuing a course of conduct indicating a neighborhood scheme . . ."); see also Collum v. Neuhoff, 507 S.W.2d 920, 927 (Tex.Civ. App.-Dallas 1974, no writ) (on motion for rehearing: indicating that the reservation of areas for parks or common areas, along with assessments for their maintenance, tends to prove intent for a general plan of development).
[6] See Anderson, 495 S.W.2d at 359 (Tex.Civ. App.-Texarkana, 1973) (holding that when evidence on the recorded plat indicates intent, a referenced recreational area becomes incorporated by reference and lot purchasers can rely on that dedication); see generally Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n, Inc., 178 S.W.3d 384, 394 (Tex.App.-Fort Worth 2005, pet. denied) (discussing the reservation of common areas to be maintained for the benefit of the homeowners); Selected Lands Corp. v. Speich, 702 S.W.2d 197, 200 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.) (discussing how common areas are often evidence of a general plan of development); see also McCart v. Cain, 416 S.W.2d 463, 465-66 (Tex.App.-Fort Worth 1967, writ ref'd n.r.e.) (discussing the right of homeowners to enforce restrictions on these common areas); Evans, 796 S.W.2d at 466.
[7] However, this is not to say that the restrictions could not be modified in accordance with applicable procedures to remove this requirement. See Tex. Prop.Code Ann. §§ 210.004-.008 (Vernon Supp.2007).
[8] Although the Committee pleaded other grounds for challenging the sale of the Park, this is its only contention on appeal regarding the ownership issue. Therefore, the other grounds are not before us for any purpose and do not bear on whether jurisdiction exists to decide the sole ground asserted in this appeal.
[9] Standing is a component of subject matter jurisdiction and cannot be waived. McAllen Med. Ctr. v. Cortez, 66 S.W.3d 227, 238 (Tex. 2001). Without past or present ownership interest in title to land, a party does not have standing to challenge the transfer of the title pertaining to said land. See Marburger v. Seminole Pipeline Co., 957 S.W.2d 82, 89-90 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (deciding husband who had no ownership interest in wife's real property did not have standing to contest validity of easement over land); Hollar v. Jowers, 310 S.W.2d 721, 724 (Tex.Civ.App.-Eastland 1958, writ ref'd n.r.e.) (deciding party who had no ownership interest in land was not entitled to bring suit to cancel deeds).
[10] Subsets of homeowners are valid parties to declaratory judgments made for or against homeowner's associations. See e.g., Brooks v. Northglen Ass'n, 141 S.W.3d 158, 162-63 (Tex.2004) (noting that in a declaratory judgment, individual homeowners, though not indispensable, are valid parties); Wilchester W. Concerned Homeowners LDEF, Inc. v. Wilchester W. Fund, Inc., 177 S.W.3d 552, 558-561 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (discussing the right of a sub-group of homeowners to challenge a homeowner's association action). In this case, the Committee members, though a subset of the total community, are all owners in Clear Creek Village. Such an organization may have standing if: (1) its members have standing to sue on their own behalf, (2) the interests the organization seek to protect are germane to the organization's purpose, and (3) neither the claim nor the relief requested requires the participation of individual members in the lawsuit. Tex. Ass'n. of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 447-48 (Tex.1993).
[11] The dissenting opinion correctly recognizes that if the Association had title and ability to transfer the Park to Rakowski, then the members of the Committee would be personally aggrieved and have standing to contest the transfer. However, because the Committee's sole contention on appeal is that the Association does not have such title, the Committee is necessarily also thereby contending that it is not aggrieved so as to have standing. Similarly, the dissenting opinion would reverse the summary judgment on grounds not asserted by the Committee on appeal and thus unassigned error.
[12] The dissenting opinion contends that a determination of standing can not be based on a party's position on the merits. While it is correct that a party can not be required to prove their entire case to establish jurisdiction, a party's position on the merits is frequently what distinguishes between the party's standing and a lack of standing. See, e.g., S. Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 307-08 (Tex.2007) (holding that taxpayer lacked standing to assert that the contract was misapplied, but would have had standing to allege that the contract was illegal); City of Houston v. Williams, 216 S.W.3d 827, 828-29 (Tex.2007) (holding that retired firefighters lacked standing to seek a statutory interpretation on behalf of firefighters still employed, but would have had such standing if they had asserted a right to payments from the City in the future); Allstate Indem. Co. v. Forth, 204 S.W.3d 795, 795-96 (Tex.2006) (holding that insured lacked standing to sue her insurer for settling her medical bills in an allegedly arbitrary and unreasonable manner, but would have had standing if insured had asserted that she had unreimbursed, out-of-pocket medical expenses); Bland Ind. Sch. Dist. v. Blue, 34 S.W.3d 547, 554-58 (Tex.2000) (noting that a party's allegation of amount in controversy is jurisdictional, and holding that a taxpayer who has no distinct injury from the general public has standing to sue a governmental entity to enjoin an illegal expenditure of public funds, but lacks standing to enjoin the entity from paying for goods and services it has already received and placed into permanent use).
[1] The concurring and dissenting opinion of December 20, 2007 is withdrawn, and the following substitute concurring and dissenting opinion is issued in its place.
[2] The trial court ruled on various motions for summary judgment and made a number of declarations as a matter of law. These rulings did not yield a final judgment; however, the trial court severed its summary-judgment rulings as to two specific issues into the case below to create a final judgment that is the subject of this appeal and cross-appeal.
[3] See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.2000) (holding that court may not delve into merits of the case in deciding whether a party has standing). In addition, even if the Committee lacked standing, as the plurality concludes, it would be inappropriate to affirm. Rather, the proper judgment would be either to dismiss that part of the appeal (if there were standing in the trial court but not on appeal) or to vacate the part of the trial court's judgment as to which there is no standing and dismiss that part of the appeal. See Gantt v. Gantt, 208 S.W.3d 27, 31 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (vacating trial court judgment and dismissing appeal based on lack of subject matter jurisdiction in the trial court and on appeal); Harper v. Welchem, Inc., 799 S.W.2d 492, 496 (Tex.App.-Houston [14 Dist.] 1990, no writ) (stating that the correct disposition upon concluding that a party lacks standing is to dismiss).
[4] Therefore, the claims sought affect the inquiry into whether a party has standing to assert the claims; however, a party's position on the merits should not affect the determination of whether the party has an interest in the controversy. Under the plurality's analysis, the Committee would have standing to seek a declaratory judgment on the issue of whether the Association has title if it sought a declaration that the Association holds title to Claiborne Park, but the Committee lacks standing as to that same issue because it argues that the Association does not have title. The existence of the Committee's interest in the resolution of this title question should not depend on how the question gets answered.
[5] The plurality's reasoning is flawed because it rests on the false premise that the Committee members must assert that the Association owns the property before they can be aggrieved and have standing. See ante at p. 679 & n. 11. This proposition is not supported by the case law. See Austin Nursing Ctr., Inc., 171 S.W.3d at 848-49; Nootsie, Ltd., 925 S.W.2d at 661-62; Marburger, 957 S.W.2d at 89. Based on this false premise, the plurality concludes that, for the Committee to have standing, this court would have to find that the Committee is asserting that the Association has title, which the plurality correctly notes is contrary to the Committee's legal position. Because the Committee can assert, and under its pleadings and the record, is asserting an interest in the controversy as to whether the Association has title, and because the Committee asserts that its members are aggrieved in the six respects listed above, there is no requirement that the Committee members assert that the Association have title before they can show an interest in the controversy and aggrievement. Performing the legal analysis under the Texas Supreme Court's standard, it is clear that the Committee members have standing regarding the title issue.
[6] The other case cited by the plurality also does not support the proposition that a party must have been a past or present owner of land to have standing to challenge the transfer of title to the land. See Hollar v. Jowers, 310 S.W.2d 721, 724 (Tex.Civ.App.-Eastland 1958, writ ref'd n.r.e.) (stating that appellees needed to show an interest in land to bring suit to cancel deed regarding the land but that interest could be mere status as heir of deceased grantor rather than ownership in the land, and reversing and remanding based on failure to join all indispensable parties rather than vacating based on a lack of standing).
[7] Because the severance order limited this issue to the declaration that the Association is the legal and lawful record title owner of Claiborne Park, there is no issue in this appeal regarding adverse possession.
[8] The parties in this case sought declaratory relief but did not assert any trespass-to-try-title claim. This court need not address whether the trial court was barred from awarding declaratory relief regarding record title to the park property based on the Texas Supreme Court's decision in Martin v. Amerman, 133 S.W.3d 262, 266-68 (Tex.2004). Even if the trial court were so barred, that would be a statutory, nonjurisdictional argument that the parties waived by not asserting it in the court below. See Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 75-76 (Tex.2000).
[9] The statement by Dale L. Hardy, in his affidavit, that the 1969 Deed is an "instrument conveying the Park Property' from William H. Williams to Clear Creek Village Civic Club" is a legal conclusion, and therefore no evidence.
[10] In the Committee's opening brief on cross-appeal, the Committee (1) did not mention that it filed a motion seeking a declaratory judgment that, as a matter of law, the Association does not hold record title to the park property, (2) did not cite the text of this motion, although it cited two exhibits to this motion, (3) did not ask this court to reverse the trial court's denial of this motion and render judgment granting this motion, and (4) did not provide this court with argument, analysis, or authorities explaining why the trial court purportedly erred in denying this motion. See Tex.R.App. P. 38.1(h). Because of this briefing waiver, the court need not address whether the trial court erred in denying this motion. Even were the court to consider this issue, under the applicable standard of review, the court would have to conclude that the summary-judgment evidence does not prove this proposition as a matter of law.